## JALOWIEC REALTY ASSOCIATES, L.P. *v.* PLANNING AND ZONING COMMISSION OF THE CITY OF ANSONIA ET AL.
## (SC 17557)

Sullivan, C. J., and Borden, Katz, Vertefeuille and Zarella, Js.*

* The listing of justices reflects their seniority status on this court as of the date of argument.

Argued January 10—officially released May 30, 2006

Timothy J. Lee, for the appellant (plaintiff).

Daniel Shepro, with whom was Rebekah L. Sprano, for the appellees (defendants).

*Opinion*

SULLIVAN, C. J. The plaintiff, Jalowiec Realty Associates, L.P., appeals[1] from the trial court's judgment denying its application for a writ of mandamus ordering the defendants, the planning and zoning commission (commission) of the city of Ansonia (city) and its individual members,[2] to issue a certificate of approval of the plaintiff's site plan application. On appeal, the plaintiff claims: (1) it was entitled to a writ of mandamus because its site plan application was approved by operation of law when the commission did not render its decision in a timely manner; (2) the trial court improperly decided that the plaintiff's site plan application violated the city's zoning regulations; and (3) the trial court abused its discretion when it denied the writ of mandamus because the proposed project was contrary to the public interest. The defendants claim, as an alternate ground for affirmance, that the plaintiff's submission of a revised site plan on October 28, 2002, extended the commission's deadline to act on the application. We reverse the judgment of the trial court.

The record and the parties' joint stipulation of facts reveal the following relevant facts and procedural history. On September 19, 2002, the plaintiff filed an application for approval of a site plan to build a child day

---

[1] The plaintiff appealed to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] The individual members are: William Schuchmann, Sr., William J. Malerba, John Hunt, Nunzio Parente, Theodore L. Davis, Edward J. Sokolnicki, Jr., and Bartholomew R. Flaherty III.

care facility at 17 Elm Street, which is located in a residential zone. The application was placed on the agenda for the commission's next regularly scheduled meeting on September 30, 2002. Although city zoning regulations did not require a public hearing in connection with the plaintiff's site plan application, the commission held a discretionary public hearing on October 28, 2002. At the hearing, the plaintiff submitted a drawing depicting changes to the site plan that had been submitted on September 19. After hearing testimony from the plaintiff's experts and from members of the public, the commission continued the public hearing until November 25, 2002. The commission rendered a final decision to deny the application on January 27, 2003. Prior to the January 27, 2003 denial, the plaintiff asked the commission to issue a certificate of approval of the site plan application, claiming that it had been approved by operation of law pursuant to General Statutes §§ 8-7d (b)[3] and 8-3 (g)[4] because more than sixty-five days had passed since the plan was submitted. The commission refused, and the plaintiff brought the present mandamus action.

The case was tried to the court, which rendered judgment in favor of the defendants. The court denied the plaintiff's request for a writ of mandamus because: (1)

[3] General Statutes § 8-7d (b) provides in relevant part: "Notwithstanding the provisions of subsection (a) of this section, whenever the approval of a site plan is the only requirement to be met or remaining to be met under the zoning regulations for any building, use or structure, a decision on an application for approval of such site plan shall be rendered within sixty-five days after receipt of such site plan. . . ."

[4] General Statutes § 8-3 (g) provides in relevant part: "A site plan may be modified or denied only if it fails to comply with requirements already set forth in the zoning or inland wetlands regulations. Approval of a site plan shall be presumed unless a decision to deny or modify it is rendered within the period specified in section 8-7d. A certificate of approval of any plan for which the period for approval has expired and on which no action has been taken shall be sent to the applicant within fifteen days of the date on which the period for approval has expired. . . ."

the plaintiff had not submitted a sewer permit with its application pursuant to § 510.4.23[5] of the city zoning regulations; (2) automatic approval under §§ 8-7d (b) and 8-3 (g) would conflict with the town's regulations governing child day care facilities; and (3) the facility would create traffic hazards and would have a negative impact on the community.

At the outset, we set forth the standard of review. "In deciding the propriety of a writ of mandamus, the trial court exercises discretion rooted in the principles of equity. . . . In determining whether the trial court abused its discretion, this court must make every reasonable presumption in favor of its action." (Citations omitted; internal quotation marks omitted.) *AvalonBay Communities, Inc.* v. *Sewer Commission*, 270 Conn. 409, 417, 853 A.2d 497 (2004). Nevertheless, this court will overturn a lower court's judgment if it has committed a clear error or if it has misconceived the law. See *State* v. *Reid*, 254 Conn. 540, 550, 757 A.2d 482 (2000).

A writ of mandamus is "an extraordinary remedy, available in limited circumstances for limited purposes. . . . [The court's discretion] will be exercised in favor of issuing the writ only where the plaintiff has a clear legal right to have done that which he seeks. . . . The writ is proper only when (1) the law imposes on the party against whom the writ would run a duty the performance of which is mandatory and not discretionary; (2) the party applying for the writ has a clear legal right to have the duty performed; and (3) there is no other specific adequate remedy." (Internal quotation marks omitted.) *AvalonBay Communities, Inc.* v. *Sewer Commission*, supra, 270 Conn. 416–17.

---

[5] Section 510.4.23 of the city zoning regulations provides: "Site plans submitted shall show all proposed uses including all intended operations and outdoor equipment, and shall be accompanied by the following where appropriate . . . A Public Sewer Permit from the Ansonia Sewer Commission or a Septic System Permit from the Valley Health Department; where applicable."

We now turn to the statutes governing the automatic approval of site plan applications. Section 8-7d (b) provides that "whenever the approval of a site plan is the only requirement to be met or remaining to be met under the zoning regulations for any building, use or structure, a decision on an application for approval of such site plan shall be rendered within sixty-five days after receipt of such site plan." Section 8-3 (g) provides that "[a]pproval of a site plan shall be presumed unless a decision to deny or modify it is rendered within the period specified in section 8-7d. A certificate of approval of any plan for which the period for approval has expired and on which no action has been taken shall be sent to the applicant within fifteen days of the date on which the period for approval has expired."

This court previously has considered whether a writ of mandamus compelling a zoning commission to issue a certificate of approval is the appropriate remedy for violations of the sixty-five day time limit set forth in § 8-7d (b). In *Merlo* v. *Planning & Zoning Commission*, 196 Conn. 676, 680–81, 495 A.2d 268 (1985), we acknowledged our prior implicit approval of the remedy of mandamus in cases where it is claimed that a zoning authority has failed to comply with statutory time limits. See also *SSM Associates Ltd. Partnership* v. *Plan & Zoning Commission*, 211 Conn. 331, 332, 559 A.2d 196 (1989) (affirming judgment granting writ of mandamus in §§ 8-7d [b] and 8-3 [g] automatic approval case); *Harlow* v. *Planning & Zoning Commission*, 194 Conn. 187, 196–97, 479 A.2d 808 (1984) (mandamus is appropriate remedy when commission does not decide site plan application within sixty-five days); *Caldrello* v. *Planning Board*, 193 Conn. 387, 392–93, 476 A.2d 1063 (1984) (because failure to act on application within time limit results in approval by operation of law, plaintiff had clear legal right to issuance of certificate of approval for subdivision plan). Accordingly, under §§ 8-

7d (b) and 8-3 (g), a plaintiff is entitled to a writ of mandamus when the statutory time limit has expired as long as "approval of a site plan is the only requirement to be met or remaining to be met under the zoning regulations . . . ." General Statutes § 8-7d (b).

I

The plaintiff first claims that approval of its site plan application was the only remaining requirement to be met under city zoning regulations. In response, the defendants claim that because the plaintiff had not obtained a sewer permit prior to submitting its application, the application was incomplete under § 510.4.23 of the zoning regulations, and the sanction of automatic approval cannot apply. We agree with the plaintiff.

The question of whether the plaintiff's site plan application was complete is a mixed question of law and fact over which our review is de novo. *State* v. *Ross*, 269 Conn. 213, 291, 849 A.2d 648 (2004). In order to resolve this question, we must interpret § 510.4.23 of the city zoning regulations. "[A] zoning regulation is legislative in nature, and its interpretation involves the principles of statutory interpretation." (Internal quotation marks omitted.) *Barbieri* v. *Planning & Zoning Commission*, 80 Conn. App. 169, 174, 833 A.2d 939 (2003). "[I]n construing statutes, we presume that there is a purpose behind every sentence, clause, or phrase used in an act and that no part of a statute is superfluous." (Internal quotation marks omitted.) *Echavarria* v. *National Grange Mutual Ins. Co.*, 275 Conn. 408, 415, 880 A.2d 882 (2005). We also note that, although this court is not bound by a zoning board's interpretation of its regulations, a board's reasonable, time-tested interpretation is given great weight. *Doyen* v. *Zoning Board of Appeals*, 67 Conn. App. 597, 603–604, 789 A.2d 478, cert. denied, 260 Conn. 901, 793 A.2d 1088 (2002).

Section 510.4 of the city's zoning regulations, entitled "Site Plan Elements," provides: "Site plans submitted shall show all proposed uses including all intended operations and outdoor equipment, and shall be accompanied by the following *where appropriate* . . . ." (Emphasis added.) Section 510.4.23 lists sewer permits as one of the site plan elements. The plain language of this regulation contemplates that not all of the site plan elements listed under § 510.4 are necessary or appropriate to complete a given application, and the evidence produced at trial established that, in practice, the commission has concluded that sewer permits are seldom, *if ever*, "appropriate" elements of a site plan application. Three witnesses gave largely uncontroverted testimony that, in recent memory, the commission never has required applicants to submit sewer permits with their site plan applications. The commission's secretary testified that, in her twenty-seven years at the commission, she could not recall a single site plan application that had included a sewer permit. The former and current chairmen of the city's water pollution control authority (authority) also testified that the authority will not issue a sewer permit until after a site plan has been approved by the commission.[6] They testified that applicants in

---

[6] Richard Krueger, the former chairman of the authority, who served between 1989 and 2002, testified:

"[The Plaintiff's Counsel]: During your years [of] service on the [authority], would the . . . [authority] approve a connection to a sewer line if the project had not received site plan approval from [the commission]?

"[Krueger]: No, it would cause us a problem, because let's say if we issued a permit and then they came back and they—went back to the [commission], if they made some changes related to the original application, we would have no idea what those changes were.

"[The Plaintiff's Counsel]: So site plan approval from [the commission] was required prior to approval from [the authority]?

"[Krueger]: Basically. I don't—I can't remember in my period of time that we ever issued a permit without knowing that the site plan was approved through our engineering people."

The testimony of Howard Madigosky, the current chairman who has served on the authority since 1989, concurred with Krueger's testimony.

the city generally obtain site plan approval before applying for their sewer permits.

We conclude that, in accordance with the commission's time-tested interpretation of § 510.4.23, the plaintiff's site plan application was complete without a sewer permit. Indeed, in light of the long-term practices of the local authorities, any other interpretation of § 510.4.23 would lead to a bizarre result. See *Vibert* v. *Board of Education,* 260 Conn. 167, 177, 793 A.2d 1076 (2002) (refusing to interpret statute in way that would lead to bizarre result). If the commission could insist that each applicant submit with its application a permit that the authority will not issue until after an application has been approved, all applicants would be placed in a catch-22 situation.

Moreover, if we were to adopt the defendants' position that a site plan application without a sewer permit is incomplete for purposes of §§ 8-7d (b) and 8-3 (g), the sanction of automatic approval never would apply to the commission because no one would be able to submit a complete application. Local zoning authorities could exempt themselves from § 8-3 (g) simply by making it impossible for applicants to submit applications where "approval of a site plan is the only requirement to be met or remaining to be met under the zoning regulations . . . ." General Statutes § 8-7d (b). Such a result would be contrary to long-standing principles governing local regulations. See *SSM Associates Ltd. Partnership* v. *Plan & Zoning Commission,* supra, 211 Conn. 336 n.3 ("[p]lainly, municipal regulations cannot bypass the mandatory provisions of . . . §§ 8-3 [g] and 8-7d [b]"); see also *Modern Cigarette, Inc.* v. *Orange,* 256 Conn. 105, 119, 774 A.2d 969 (2001) (conflict exists between local ordinance and state statute if ordinance frustrates achievement of state's objectives; ordinance is preempted by statute in cases of irreconcilable conflict); *Bencivenga* v. *Milford,* 183 Conn. 168, 173, 438

A.2d 1174 (1981) ("[t]here is attached to every ordinance, charter or resolution adopted by . . . a municipality the implied condition that these must yield to the predominant power of the state when that power has been exercised"). We conclude, therefore, that approval of the plaintiff's site plan application was the only remaining requirement to be met under the city's zoning regulations.

## II

Next, we address the plaintiff's claim that the trial court improperly decided that the site plan application violated city zoning regulations. Relying on the Appellate Court's decision in *Par Developers, Ltd.* v. *Planning & Zoning Commission*, 37 Conn. App. 348, 655 A.2d 1164 (1995), the trial court declined to issue a writ of mandamus because it found that the plaintiff's application violated § 720.12.2 of the city zoning regulations. See id., 354 ("[w]here the effect of automatic approval would result in a questionable certificate of approval because another law is violated, the plaintiff's right to have the duty performed is far from clear"). We need not address this claim because the defendants have conceded that the site plan application did not violate § 720.12.2.[7]

The defendants now claim, however, that the application violated other zoning regulations, namely

---

[7] The trial court mistakenly applied an outdated version of § 720.12.2 of the zoning regulations. Prior to its submission of the site plan application, the plaintiff successfully petitioned the commission for an amendment to § 720.12.2. The amended version of § 720.12.2, which was in effect when the plaintiff filed its application, provided: "The maximum number of children to be cared for shall be specific and if located in a Residence District shall not exceed 12 unless the facility is an adjunct to an existing public or private school, place of religious worship, neighborhood facility of the City of Ansonia, nursing home, non-profit membership club, multi-family dwelling or *a parcel of land not less than 3 acres.*" (Emphasis added.) The size of the plaintiff's property is greater than three acres, and, in their brief to this court, the defendants concede that the plaintiff's application did not violate § 720.12.2.

§§ 720.12.4, 720.12.5, 510.3.2, 510.4.19, 510.4.12 and 510.4.13. They claim that these violations provided a legal basis to deny the writ, even if the commission did not comply with the time limits set forth in § 8-7d (b). We decline to review this claim because the defendants did not raise it adequately before the trial court.[8] See *Seymour* v. *Region One Board of Education*, 274 Conn. 92, 105, 874 A.2d 742 (" '[t]o review [a] claim, which has been articulated for the first time on appeal and not before the trial court, would result in a trial by ambuscade of the trial judge' "), cert. denied, 546 U.S. 1016, 126 S. Ct. 659, 163 L. Ed. 2d 526 (2005).

### III

We next address the plaintiff's claim that the trial court improperly refused to issue a writ of mandamus on the ground that approval of the site plan application was not in the public's best interests. See *Sullivan* v. *Morgan*, 155 Conn. 630, 635, 236 A.2d 906 (1967) ("[i]f the right to the issuance of the writ is asserted contrary to the public interest, the court might refuse its aid in mandamus proceedings" [internal quotation marks omitted]). We agree with the plaintiff.

There is authority for the proposition that, even when a plaintiff has a clear legal right to the writ, principles of equity and justice may militate against its issuance. Courts have discretion to consider equitable principles when deciding whether to issue the writ. 52 Am. Jur. 2d 287, Mandamus § 20 (2000). "The writ [of mandamus]

---

[8] In a memorandum of law filed with the trial court on October 21, 2004, the defendants claimed that the commission's January 27, 2003 decision to deny the application was not "illegal, arbitrary, or in abuse of discretion" because the site plan application violated the sections of the zoning regulations set forth previously. The propriety of the commission's decision was not, however, at issue in this mandamus action because the plaintiff claimed that its right to a certificate of approval vested regardless of the commission's decision. At trial, the defendants cited no authority for the proposition that these alleged violations provided an adequate basis for denying the writ despite the commission's failure to comply with the sixty-five day time limit, and the trial court did not address this issue in its opinion.

will be granted to prevent a failure of justice, but never to promote manifest injustice. It is a remedial process and may be issued to remedy a wrong, not to promote one, to compel the discharge of a duty which ought to be performed, but not to compel the performance of an act which will work a public and private mischief, or to compel a compliance with the strict letter of the law in disregard of its spirit or in aid of a palpable fraud. The relator must come into court with clean hands." (Internal quotation marks omitted.) *State ex rel. Costelo* v. *Middlesex Banking Co.*, 87 Conn. 483, 487–88, 88 A. 861 (1913).

This equitable discretion is exercised in instances wherein the party seeking the writ has engaged in improper conduct or otherwise has violated equitable principles. For example, in *State ex rel. Costelo* v. *Middlesex Banking Co.*, supra, 87 Conn. 484, a stockholder petitioned the court for a writ of mandamus compelling the defendant to disclose the names and addresses of his fellow stockholders. The defendant claimed that the stockholder had demanded the information for an improper purpose, namely to compile an investment list for commercial sale. Id. Although the stockholder had a clear legal right to obtain the information, the court refused to issue the writ because "[t]he application must be made in good faith and not to serve an ulterior improper purpose." Id., 488. In *Hackett* v. *New Britain*, 2 Conn. App. 225, 226, 228–29, 477 A.2d 148, cert. denied, 194 Conn. 805, 482 A.2d 710 (1984), the court refused to issue a writ compelling reinstatement of the plaintiff's full pension benefits because the plaintiff had obtained civil service promotions through fraud and bribery. In *Sullivan* v. *Morgan*, supra, 155 Conn. 634–35, this court recognized that a trial court may exercise its discretion to deny a writ of mandamus when the plaintiff unreasonably has delayed the assertion of his rights. Cf. *Sansone* v. *Clifford*, 219 Conn. 217, 228,

592 A.2d 931 (1991) (court had discretion to deny mandamus because plaintiff would derive no practical benefit from it). Other jurisdictions follow the same rule. See, e.g., *Dierssen* v. *Civil Service Commission*, 43 Cal. App. 2d 53, 57, 110 P.2d 513 (1941) (those seeking mandamus must have clean hands); *State ex rel. Erickson* v. *Magie*, 183 Minn. 60, 61, 235 N.W. 526 (1931) (mandamus denied to applicants who have engaged in illegal or fraudulent conduct or otherwise violated equitable principles); *Westerman* v. *Mims*, 111 Tex. 29, 39, 227 S.W. 178 (1921) (mandamus denied to applicants with unclean hands).

A trial court may not, however, deny the writ simply because it disagrees with the legally mandated outcome. In the present case, there was no evidence that the plaintiff had engaged in fraudulent or inequitable conduct. Instead, the trial court denied the plaintiff's application for a writ of mandamus because it agreed with the commission's conclusion that the proposed day care center would have an adverse impact on the neighborhood. "It is fundamental that the issuance of the writ rests in the discretion of the court, not an arbitrary discretion exercised as a result of caprice but a sound discretion *exercised in accordance with recognized principles of law.*" (Emphasis added.) *AvalonBay Communities, Inc.* v. *Sewer Commission*, supra, 270 Conn. 417. Accordingly, we conclude that the trial court abused its discretion when it denied the writ for this reason.[9]

[9] The plaintiff also claims that there was no evidentiary basis for the trial court's conclusion that the proposed day care center would be detrimental to the neighborhood. In addition, the plaintiff points out that the commission was unable to consider traffic and safety concerns when deciding whether to approve the plaintiff's application because the proposed facility was a permitted use. As a result, the plaintiff argues, it was improper for the trial court to consider such concerns when deciding whether to issue the writ. In light of our conclusion that the trial court abused its discretion when it considered the proposal's impact on the neighborhood, we need not address these claims.

## IV

Finally, we address the defendants' alternate ground for affirmance. They claim that automatic approval never occurred because the plaintiff submitted a revised site plan at the October 28, 2002 public hearing. They argue that this revised site plan should be regarded as a new application that was not officially received by the commission until its next regularly scheduled meeting on November 25, 2002, and, therefore, the January 27, 2003 decision was timely. See General Statutes § 8-7d (c).[10] We disagree.

The following additional facts are relevant to our analysis of this issue. At the October 28, 2002 public hearing, the plaintiff's engineer submitted a revised site plan. The original site plan provided for a driveway with a single opening onto the street. The new site plan provided for a one-way driveway with an entrance on Elm Street and an exit on Thomas Street. The engineer also altered the driveway's "radii encroachment." The trial court found that there was no support for a finding that the plaintiff had submitted a revised application, and it did not reach any conclusions about whether the plaintiff's submission of a revised site plan started a new sixty-five day period.

At the outset, we set forth our standard of review. The question of whether the submission of a revised site plan tolls the sixty-five day period in § 8-7d (b) is an issue of statutory interpretation, over which our review is plenary. *Echavarria* v. *National Grange Mutual Ins. Co.*, supra, 275 Conn. 414. "Relevant legisla-

---

[10] General Statutes § 8-7d (c) provides in relevant part: "For purposes of subsection (a) or (b) of this section . . . the date of receipt of a petition, application, request or appeal shall be the day of the next regularly scheduled meeting of such commission, board or agency, immediately following the day of submission to such commission, board or agency or its agent of such petition, application, request or appeal or thirty-five days after such submission, whichever is sooner. . . ."

tion and precedent guide the process of statutory interpretation. [General Statutes § 1-2z] provides that, [t]he meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) Id.

In *University Realty, Inc.* v. *Planning Commission*, 3 Conn. App. 556, 561, 490 A.2d 96 (1985), the Appellate Court addressed whether the submission of a revised site plan tolls the sixty-five day period under § 8-7d (b). In that case, the plaintiffs filed an application for a certificate of approval of their site plan to build a shopping complex. Id., 557–58. The application, which was filed on July 6, 1983, officially was accepted at the commission's next regularly scheduled meeting on July 13. Id., 558, 561; see also General Statutes § 8-7d (c). At subsequent meetings, the commission voiced various concerns about the plaintiffs' site plan, which the plaintiffs addressed in a revised site plan. *University Realty, Inc.* v. *Planning Commission*, supra, 559. The commission ultimately denied the application on October 12, 1983, because the plaintiffs' proposal created traffic problems and "violated the general purpose of the zoning ordinance to promote health, safety and general welfare." Id., 559–60. The plaintiffs appealed from the commission's decision to the trial court, which sustained their appeal under the automatic approval provisions of §§ 8-7d (b) and 8-3 (g). Id., 557. On appeal from the trial court's judgment, the commission claimed that submission of a revised site plan triggered a new sixty-five day period. Id., 561.

The Appellate Court began its analysis with the language of § 8-7d (b): "[A] decision on an application for

approval of such site plan shall be rendered within sixty-five days after *receipt of such site plan.*" (Emphasis added; internal quotation marks omitted.) Id., 562. The court noted that, although this sentence suggests that the receipt of a site plan triggers the sixty-five day period, other language in § 8-7d confirms that receipt of an *application* is the triggering event. See id. For example, § 8-7d (a) requires that mandatory hearings commence within sixty-five days of receipt of the *application*; id.; and § 8-7d (c) clarifies when "receipt" occurs, for purposes of the time limits in subsections (a) and (b), by setting the date of receipt of the *application,* not the date of receipt of the site plan. Id., 562–63. The Appellate Court also observed that the legislative history supported its interpretation. Id.

The court concluded: "To harmonize the somewhat contradictory language of subsection (b) with subsection (c), and the three subsections with each other, it is necessary to read the reference in subsection (b) to receipt of such site plan as a repetition of the earlier reference in the same sentence to the receipt of the application for approval of a site plan. It would have made little legislative sense for the legislature, in the same public act, to set up two differing temporal measurements for such closely related zoning matters." (Internal quotation marks omitted.) Id., 563.

We are persuaded by the Appellate Court's reasoning in *University Realty, Inc.* We also note that additional language in § 8-7d (b) lends support to the conclusion that the submission of a revised site plan does not initiate a new sixty-five day period. In 2002, when the plaintiff filed his application, § 8-7d (b) provided that "[t]he applicant may consent to one or more extensions of such period, provided the total period of any such extension or extensions shall not exceed two further sixty-five-day periods . . . ." This language created a maximum period for consideration of a site plan appli-

cation. Even the applicant, whom the statute was meant to protect, could not extend the period for consideration beyond 195 days. In 2003, the legislature amended § 8-7d (b) to provide that the applicant could consent to an extension or extensions provided that "the total period of any such extension or extensions shall not exceed sixty-five days . . . ." Public Acts 2003, No. 03-177. Thus, it is apparent that the legislature intended to create an efficient process, first by limiting the amount of time each site plan application could remain before a zoning commission to 195 days, and later by limiting the time period to 130 days. If, as the defendants claim, every minor revision to a site plan resets the clock, very few site plan applications would be decided in a timely and efficient manner, frustrating this legislative intent. See *Winchester Woods Associates* v. *Planning & Zoning Commission*, 219 Conn. 303, 309, 592 A.2d 953 (1991) (" 'statutes are to be considered to give effect to the apparent intention of the lawmaking body' ").[11] Accordingly, we conclude that the plaintiff's submission of a revised site plan did not create a new sixty-five day period within which the commission could act.[12]

In support of their claim that the submission of a revised site plan tolls the sixty-five day period, the

---

[11] The legislative history supports our conclusion that the legislature sought to create a time efficient procedure for reviewing site plan applications. Proponents of No. 77-450 of the 1977 Public Acts described the sixty-five day time limit as avoiding a situation where a simple site plan "disappear[s] into the bowels of the commission for a year or two." 20 H.R. Proc., Pt. 6, 1977 Sess., p. 2514, remarks of Representative Janet Polinsky.

[12] We note, as the Appellate Court did in *University Realty, Inc.* v. *Planning Commission*, supra, 3 Conn. App. 564 n.7, that a revised site plan could constitute a new application triggering a new sixty-five day review period if it contained substantial changes. Because the defendants did not adequately raise this claim in their brief, we decline to consider it. See *State* v. *Tatum*, 219 Conn. 721, 742, 595 A.2d 322 (1991) ("claimed errors not adequately briefed and not fully developed will not be considered by this court").

defendants rely on *Pinchbeck* v. *Planning & Zoning Commission*, 69 Conn. App. 796, 801–802, 796 A.2d 1208, cert. denied, 261 Conn. 928, 806 A.2d 1065 (2002). In that case, property owners submitted a site plan application seeking to add two stories to their home. Id., 798. The zoning commission approved their application, but the town's engineering department subsequently rescinded its prior approval of their septic system. Id. The owners then submitted a second application, which the commission approved. Id., 799. The plaintiff in that case, an abutting property owner, appealed from the commission's decision to the Superior Court, which dismissed the appeal. Id. On appeal to the Appellate Court, the plaintiff claimed that the trial court improperly had concluded that the second application was not a new application subject to de novo review by the commission. Id., 801–802. The Appellate Court agreed with the plaintiff and held that the second application was a new application, even though the differences between the first and second application were minor. Id.

In reaching this conclusion, the Appellate Court relied on our decision in *Koepke* v. *Zoning Board of Appeals*, 230 Conn. 452, 458, 645 A.2d 983 (1994). *Pinchbeck* v. *Planning & Zoning Commission*, supra, 69 Conn. App. 801–802. In *Koepke*, the plaintiff applied for a permit to build a radio tower. *Koepke* v. *Zoning Board of Appeals*, supra, 453. There were no objections to the proposal, so the town's zoning enforcement officer issued the permit. Id., 454. Thereafter, the enforcement officer requested that the plaintiff make minor alterations to the plans for the radio tower and submit a new plot plan. Id. The plaintiff then submitted an entirely new application that incorporated the requested changes. Id. The enforcement officer revoked the old permit and issued a new one bearing the same number as the previous permit. Id. Soon after the plaintiff received the second permit, the defendant, an abut-

ting property owner, successfully appealed from the enforcement officer's decision to the zoning board. Id. The plaintiff then appealed from the board's decision to the trial court, claiming that the board lacked subject matter jurisdiction over the defendant's appeal because it had not been filed within the applicable limitation period. Id., 456. Specifically, he claimed that the limitation period ran from the original permit's date of issuance, instead of the second permit's date of issuance.[13] Id. We concluded that the limitation period ran from the later date because the second permit was the legally operative permit. Id., 457. We also concluded that the fact that the new application contained only minor revisions had no bearing on the outcome of the case because "[a] subsequent application made in order to bring a prior application into compliance with applicable regulations, no matter how minor the work involved may be, is clearly not minor in regard to its significance and effect." (Internal quotation marks omitted.) Id., 458. In *Pinchbeck*, the Appellate Court quoted this language in support of its conclusion that a subsequent application made in order to comply with regulations must be treated as a new application by zoning authorities. *Pinchbeck* v. *Planning & Zoning Commission*, supra, 801–802.

We conclude that the defendants' reliance on this line of cases is misplaced. First, we recently decided that the court in *Pinchbeck* had misinterpreted our decision in *Koepke. Carr* v. *Planning & Zoning Commission*, 273 Conn. 573, 602–603, 872 A.2d 385 (2005). In *Carr*, we held that *Koepke* does not stand for the broad proposition that a modified application always must be

---

[13] The procedural history of *Koepke* is complicated, involving an appeal from the trial court's judgment to the Appellate Court and to this court, a remand, and then a second appeal to this court. See *Koepke* v. *Zoning Board of Appeals*, supra, 230 Conn. 454–56. Because the first appeal is irrelevant to our analysis of the present case, we have omitted a detailed description of the procedural history.

treated as an entirely new application by local zoning authorities. We explained that, "in *Koepke* . . . this court . . . held only that, when a revised zoning permit application had been submitted to a zoning authority after the approval of the original application had been revoked and the revocation had not been appealed, the decision on the revised permit application was the operative decision for purposes of determining the timeliness of an appeal . . . ." Id., 603.

In addition, in both *Koepke* and *Pinchbeck*, the applicants submitted second, revised applications. See *Koepke* v. *Zoning Board of Appeals*, supra, 230 Conn. 457 ("[i]t also is undisputed that the plaintiff submitted a new application"); *Pinchbeck* v. *Planning & Zoning Commission*, supra, 69 Conn. App. 798–99 (landowners submitted revised application). In the present case, although the plaintiff submitted a revised site plan, it never submitted an entirely new application. Moreover, neither case addressed the time limit set forth in § 8-7d (b). Accordingly, we conclude that the submission of a revised site plan by the plaintiff did not toll the sixty-five day period in § 8-7d (b).

Because the commission's decision was untimely and approval of the site plan was the only remaining requirement to be met under city zoning regulations, the plaintiff's site plan application was approved by operation of law pursuant to §§ 8-7d (b) and 8-3 (g). Therefore, the plaintiff was entitled to a writ of mandamus compelling the commission to issue a certificate of approval of its plan. See General Statutes § 8-3 (g).

The judgment is reversed and the case is remanded to the trial court with direction to render judgment for the plaintiff on the application for a writ of mandamus.

In this opinion the other justices concurred.