LUIGI CAMMAROTA ET AL. *v.* PLANNING AND ZONING COMMISSION OF THE TOWN OF TRUMBULL (AC 26597)

RICHARD KOENIG ET AL. *v.* PLANNING AND ZONING COMMISSION OF THE TOWN OF TRUMBULL ET AL. (AC 26837)

DiPentima, Lavine and Freedman, Js.

Argued April 24—officially released October 3, 2006

*Joseph A. Kubic,* with whom, on the brief, were *William T. Blake, Jr.,* and *James R. Winkel,* for the appellants (plaintiffs in the first case, defendant Luigi Cammarota et al. in the second case).

*Joseph A. Cordone,* associate town attorney, for the appellee (defendant in the first case).

*Jeffrey W. Keim,* with whom, on the brief, was *Eric M. Gross,* for the appellees (named plaintiff et al. in the second case).

*Opinion*

DiPENTIMA, J. In this consolidated appeal, the plaintiffs in docket number AC 26597, Luigi Cammarota and Lynn Cammarota, appeal from the judgment of the trial court denying their application for a writ of mandamus for automatic approval of their subdivision application. Their nine separate issues on appeal center on the single claim that the court improperly determined that the defendant, the planning and zoning commission of the town of Trumbull (commission), adequately complied with the time requirements necessary to review their application pursuant to General Statutes §§ 8-26 and 8-7d.[1] In docket number AC 26837, the Cammarotas claim

---

[1] General Statutes § 8-26, regarding the approval of subdivision plans, refers to General Statutes § 8-7d for the applicable time periods for public hearings held on the applications. General Statutes § 8-26 provides in relevant part: "All plans for subdivisions . . . shall be submitted to the commission with an application in the form to be prescribed by it. . . . The commission may hold a public hearing regarding any subdivision proposal if, in its judgment, the specific circumstances require such action. . . . Such public hearing shall be held in accordance with the provisions of section 8-7d. . . . The failure of the commission to act thereon shall be considered as an approval, and a certificate to that effect shall be issued by the commission on demand. . . ."

General Statutes § 8-7d (a) provides in relevant part: "In all matters wherein [an] application . . . must be submitted to a zoning commission, planning and zoning commission or zoning board of appeals under this chapter . . . and a hearing is required or otherwise held on such . . . application . . . such hearing shall commence within sixty-five days after receipt of such . . . application . . . and shall be completed within thirty-five days after such hearing commences . . . . All decisions on such matters shall

that the court improperly determined that the plaintiffs, Richard Koenig and other neighbors who live within 500 feet of the lot in question (Koenig neighbors),[2] were statutorily aggrieved when they filed a preemptive appeal in order to preserve their rights pursuant to General Statutes § 8-8 (c)[3] in the event that the Cammarotas prevailed on their application for a writ of mandamus. We affirm the judgment of the trial court in docket number AC 26597 and therefore dismiss the appeal in docket number AC 26837 as moot.

I

*CAMMAROTA v. PLANNING AND ZONING COMMISSION*

The Cammarotas own property at 97 Church Hill Road, Trumbull, where they also reside. On October 29, 2003, they filed an application with the commission for subdivision approval, proposing to subdivide their property into two lots. The commission scheduled a public hearing for November 19, 2003, its next regularly scheduled meeting date, and published notice of the public hearing in the Connecticut Post on November 8 and 11, 2003.

---

be rendered within sixty-five days after completion of such hearing . . . . The petitioner or applicant may consent to one or more extensions of any period specified in this subsection, provided the total extension of all such periods shall not be for longer than sixty-five days . . . ."

[2] Aside from Richard Koenig, the other neighbors involved in the appeal in docket number AC 26837 are Patricia Koenig, Edward Fians, Stephanie Fians, Edward Bader, Elaine Bader, Stephen M. Halloran, Genevieve R. Halloran, Tom Prizio, Kelly Prizio, Deborah West, Guy Dattolo, Linda Dattolo and Kurt Laursen.

[3] General Statutes § 8-8 (c) provides: "In those situations where the approval of a planning commission must be inferred because of the failure of the commission to act on an application, any aggrieved person may appeal under this section. The appeal shall be taken within twenty days after the expiration of the period prescribed in section 8-26d for action by the commission."

On the day of the public hearing, the Cammarotas sent a letter to the commission requesting that the matter be continued to the December 17, 2003 agenda for the purpose of addressing the Trumbull engineering department's concerns. On December 17, after the commission once again had published notice in the Connecticut Post, the Cammarotas sent another letter to the commission, asking that the matter be continued to the January, 2004 agenda in order to amend the plan. The commission complied with that request and scheduled the public hearing for the next available date, January 21, 2004.

On January 16, 2004, the commission informed the Cammarotas that the January 21 public hearing was canceled and would be rescheduled because notice of the hearing had not been published. On February 4, 2004, the Cammarotas sent a letter stating that "[m]ore than sixty-five . . . days ha[ve] passed since the application's receipt date without the holding of a public hearing. Therefore . . . the Cammarotas' subdivision application is automatically approved." On February 5, 2004, the commission responded by letter that the town attorney had advised it that the Cammarotas were not entitled to an automatic approval. The public hearing was rescheduled for February 18, 2004, and notice was published in the Connecticut Post on February 7 and 13, 2004.

On February 18, 2004, the Cammarotas' attorney sent a letter stating: "Based upon the automatic approval of [the Cammarotas'] subdivision, the [commission] does not have a basis for conducting a public hearing on same. As such, neither myself nor my clients will be attending the [commission's] meeting this evening." With the letter, the Cammarotas also included a copy of the complaint they had filed in court, seeking a writ of mandamus to compel the commission to issue a

certificate of approval to the Cammarotas on their application. The Cammarotas did not appear at the February 18, 2004 public hearing. On March 25, 2004, after a brief discussion regarding the issue, the commission met with the town attorney, the town engineer and the planning and zoning clerk, and voted to deny the Cammarotas' application. Notice of the denial was published in the March 30, 2004 Connecticut Post.

A trial to the court was held on the Cammarotas' amended complaint on May 5, 2005, and the court issued a memorandum of decision on May 11, 2005, denying the application for a writ of mandamus. This appeal followed. The Cammarotas claim that the court improperly denied their application because the commission did not act within the time requirements of § 8-7d as applied to subdivision applications in § 8-26, thus mandating approval of their application. We disagree.

We begin our analysis by setting forth the applicable standard of review. "In deciding the propriety of a writ of mandamus, the trial court exercises discretion rooted in the principles of equity. . . . In determining whether the trial court abused its discretion, this court must make every reasonable presumption in favor of its action. . . . Nevertheless, this court will overturn a lower court's judgment if it has committed a clear error or if it has misconceived the law." (Citation omitted; internal quotation marks omitted.) *Jalowiec Realty Associates, L.P.* v. *Planning & Zoning Commission*, 278 Conn. 408, 412, 898 A.2d 157 (2006).

"Mandamus is an extraordinary remedy, available in limited circumstances for limited purposes. . . . It is fundamental that the issuance of the writ rests in the discretion of the court, not an arbitrary discretion exercised as a result of caprice but a sound discretion exercised in accordance with recognized principles of law. . . . That discretion will be exercised in favor of issuing

the writ only where the plaintiff has a clear legal right to have done that which he seeks. . . . The writ is proper only when (1) the law imposes on the party against whom the writ would run a duty the performance of which is mandatory and not discretionary; (2) the party applying for the writ has a clear legal right to have the duty performed; and (3) there is no other specific adequate remedy." (Internal quotation marks omitted.) *Miles* v. *Foley*, 253 Conn. 381, 391, 752 A.2d 503 (2000).

The Cammarotas maintain that they have a "clear legal right" for an automatic approval on their subdivision application because the commission failed to act within the time constraints of § 8-7d.[4] Because we agree with the court that the commission complied with all three time requirements as set out in the statute, the Cammarotas are not entitled to a writ of mandamus.

A

Section 8-7d provides that when a hearing is required or otherwise held for applications to a planning and zoning commission, "such hearing shall commence within sixty-five days after receipt of such . . . application . . . ." The Cammarotas filed their application on October 29, 2003, and the commission scheduled a public hearing for the application on the next regularly

---

[4] The scope of the planning commission's authority to grant a subdivision application under General Statutes §§ 8-26 and 8-7d is a question of statutory interpretation over which our review is plenary. See *River Bend Associates, Inc.* v. *Planning Commission*, 271 Conn. 41, 55, 856 A.2d 959 (2004). "Relevant legislation and precedent guide the process of statutory interpretation. [General Statutes § 1-2z] provides that, [t]he meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *Jalowiec Realty Associates, L.P.* v. *Planning & Zoning Commission*, supra, 278 Conn. 421–22.

scheduled meeting date of November 19, 2003, which was considered, under § 8-7d, the date of receipt of the application. See General Statutes § 8-7d (c) ("date of receipt of [an] application . . . shall be the day of the next regularly scheduled meeting of such commission"). From that point, the commission had sixty-five days to commence the public hearing. The commission granted the Cammarotas' request that "this matter be continued until the December 17, 2003 agenda" twenty-eight days later. On the day scheduled for the hearing, the Cammarotas sent a facsimile request for another continuance, which the commission granted. The commission again scheduled the hearing for the next regularly scheduled meeting on January 21, 2004, sixty-three days after receipt of the application.

The Cammarotas claim that the public hearing never was opened on November 19, 2003, because a hearing need not be commenced to be continued.[5] We are not persuaded. Although the statute is silent regarding what constitutes commencement of a public hearing and there is an absence of appellate case law on the subject, one treatise notes that "[a]n agency member or a member of its staff reads the legal notice to commence the hearing." 1 R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (2d Ed. 1999) § 20.3, p. 417;

---

[5] In support of their claim that the public hearing did not commence on November 19, 2003, the Cammarotas cite 1 R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (2d Ed. 1999) (2005 pocket part) § 18.4, p. 66, which states that "[a] public hearing can be continued at an agency meeting to another date without formally opening the public hearing." We note, however, that the case cited by Fuller for this proposition, *Beeman v. Planning & Zoning Commission*, Superior Court, judicial district of New Haven, Docket No. CV99-0427275 (April 27, 2000) (27 Conn. L. Rptr. 77, 78), involving a special permit application, specified that "[t]here is no requirement that correspondence be read or testimony taken before a continuance of public hearing may be voted. . . . The [c]ourt finds that the notice of public hearing on the subject application was properly and timely published, in compliance with the requirements of statute and that said hearing was *properly commenced and continued*." (Emphasis added.)

see also *Hooper* v. *Planning & Zoning Commission,*
Superior Court, judicial district of Stamford-Norwalk,
Docket No. 196436 (December 30, 2005) ("[p]ublic
[h]earing . . . opened with the reading of the [l]egal
[n]otice"). In this case, the minutes of the November
19, 2003 hearing include the reading of the notice pub-
lished on November 8 and 14, 2003, including notice of
the Cammarotas' subdivision application. The minutes
reveal that "[l]etters were received regarding [the Cam-
marotas' application and that of another] requesting
that the hearing be continued to the December public
hearing. Upon motion made . . . seconded . . . and
carried unanimously . . . it was voted to continue
hearing to December 2003 meeting." The reading of the
notice, the receipt and consideration of letters
requesting a continuance and the vote to continue the
hearing, taken together, persuade us that the commis-
sion commenced the hearing on November 19, 2003.

B

Section 8-7d (a) in relevant part requires that the
"hearing . . . shall be completed within thirty-five
days after such hearing commences . . . ." The Cam-
marotas' attorney requested two extensions[6] by letter,
one on November 19, and the other on December 17,
2003, the very days that the public hearings were sched-
uled.[7] The commission agreed to the extensions and

---

[6] Although the Cammarotas assert that the continuances they requested
are distinct from the extensions included in the statute, they cite to no case
law, and we are unaware of any, that differentiates a continuance from an
extension in the realm of applications to a planning and zoning commission.
Therefore, for clarity in this section, we will refer to the Cammarotas'
requests as being for extensions.

[7] The letter received on November 19, 2003, stated that "[t]he applicants'
engineer requires additional time to complete plans necessary to address
the town's engineering department's comments regarding the application,"
and the one received on December 17, 2003, stated that "[t]he applicants
require additional time to obtain approvals from the state of Connecticut for
the necessary sewer and drainage easement. Further, following an additional
discussion with the town's engineering department, several amendments
are to be made to the plans."

scheduled the hearing for January 21, 2004, sixty-three days after November 19, 2003, the day the hearing commenced. Because notice was not published in the newspaper, as required by § 8-7d (a) ("[n]otice of the hearing shall be published in a newspaper having a general circulation in such municipality where the land that is the subject of the hearing is located"), the commission canceled the hearing and issued a memorandum on January 16, 2004, to that effect. On February 4, 2004, the Cammarotas' attorney sent a letter asserting that the Cammarotas were entitled to an automatic approval because more than sixty-five days had passed since the application's receipt date.[8] The Cammarotas did not attend the February 18, 2004 public hearing, which was completed on the same day.

As we already have determined that the public hearing commenced on November 19, 2003, the question before us is whether it was completed within the thirty-five day time period mandated by § 8-7d. Section 8-7d (a) provides in relevant part: "The petitioner or applicant may consent to one or more extensions of any period specified in this subsection, provided the total extension of all such periods shall not be for longer than sixty-five days . . . ." February 18, 2004, the day the public hearing was completed, falls ninety-one days after the day the hearing commenced. Thus, if the requests for extensions to which the Cammarotas consented fell within the sixty-five day extension period, and the hearing was completed within thirty-five days of those extensions, then the commission complied with the provisions of § 8-7d.

Although it concerns the sixty-five day period after the completion of the public hearing as opposed to the

---

[8] The Cammarotas maintained throughout this action that the public hearing had never commenced, and therefore the time period at issue was the sixty-five days in which the hearing must commence.

thirty-five days to complete the hearing at issue here, our Supreme Court's reasoning in *Frito-Lay, Inc.* v. *Planning & Zoning Commission*, 206 Conn. 554, 538 A.2d 1039 (1988), is apposite. In *Frito-Lay, Inc.*, the plaintiff applied for a special permit, invoking the time limitations of § 8-7d for the public hearing thereon. Id., 556. During a commission meeting after the completion of the public hearing, the applicant requested an extension of time because its representative could not attend the meeting. Id., 557. The Supreme Court agreed with the trial court that the plaintiff, "by requesting the extension [beyond the statutory period], waived the sixty-five day time limit under the statute, thereby rendering it impossible for the commission to act within that sixty-five day period. There is no question that more than sixty-five days had elapsed . . . when the commission rendered its decision. Having requested this continuance beyond what would have been sixty-five days . . . [the plaintiff] has no complaint about extending the sixty-five day limit." Id., 563. In this case, the Cammarotas, having requested the extensions beyond the thirty-five day limitation to complete the hearing, similarly cannot complain now about the effect of the extensions' having been granted.

The statute provides that either the petitioner or applicant may consent to extensions of the statutory time periods. By their letters to the commission, the Cammarotas clearly consented to extensions. In *Metropolitan Homes, Inc.* v. *Town Plan & Zoning Commission*, 152 Conn. 7, 202 A.2d 241 (1964), the plaintiff claimed approval of its subdivision application because the commission had acted beyond the time permitted in the relevant statute. Id., 14. Nevertheless, our Supreme Court noted that "[t]he plaintiff's representative clearly indicated the willingness of the plaintiff to wait for [action by the town] before going ahead. Thus, it appears that the plaintiff consented to an extension of

the time within which the commission should act on the plaintiff's application. Under these circumstances, the plaintiff cannot claim approval of the subdivision by reason of the failure of the commission to act on its application within the time limited under the statute." Id. The court further observed that "when consent for such an extension is given, prudence dictates that such consent be given in writing." Id.; cf. *University Realty, Inc.* v. *Planning Commission*, 3 Conn. App. 556, 565, 490 A.2d 96 (1985) (applicant's oral request to table application for site plan approval did not constitute consent to extension of time under § 8-7d). We find that the Supreme Court's reasoning in *Metropolitan Homes, Inc.*, supports the conclusion that the Cammarotas consented to extensions of the statutory time periods.

To read the sixty-five day extension as subsuming the statutory time period for completing the hearing would be illogical. If an applicant consented to an extension of sixty-five days, for example, a commission would be forced to take action immediately thereafter rather than within the time allowed by the express language of § 8-7d. Therefore, a fair reading of the statute reveals that the time for an extension would be *in addition to* the time allotted for the commission to act. "Common sense and the phrasing of the statute would suggest that the extension would run from the end of the original time period, not when the applicant grants it . . . ." *Mileski* v. *Planning & Zoning Commission*, Superior Court, judicial district of Ansonia-Milford, Docket No. CV89-030284S (July 24, 1990). Although we agree that the legislative purpose of limiting the amount of time a subdivision application could remain before a commission was to expedite the process; see, e.g., *Jalowiec Realty Associates, L.P.* v. *Planning & Zoning Commission*, supra, 278 Conn. 423–24 (noting that 2003 amendment to § 8-7d [b] limiting time of extension from

two to one sixty-five day period for site plan application demonstrated that legislature "intended to create an efficient process"); we decline to allow the applicant to exploit the time periods of the statute by requesting extensions. Thus, when the commission completed the public hearing on February 18, 2004, after the two extensions requested by the Cammarotas, it did so within the time limits of the statute.

## C

Finally, § 8-7d provides in relevant part that "[a]ll decisions on such matters shall be rendered within sixty-five days after completion of such hearing . . . ." The public hearing was completed on February 18, 2004, and the commission voted to deny the subdivision application on March 25, 2004. On March 29, the commission sent the Cammarotas a letter stating that it had voted to deny the application, and notice of such was published on March 30, in the Connecticut Post. Because a decision was rendered within sixty-five days of the completion of the hearing, the commission was in compliance with the time requirements of § 8-7d. As they have not exhibited a "clear legal right" to have their subdivision application approved, the Cammarotas' mandamus action does not lie.[9]

## II

### KOENIG v. PLANNING AND ZONING COMMISSION

The Koenig neighbors filed an appeal in order to preserve their rights pursuant to § 8-8 (c) in the event that the court approved the Cammarotas' application

[9] Even if the Cammarotas had shown that the commission had not complied with the time limitations of General Statutes § 8-7d, however, "principles of equity and justice may militate against [a writ's] issuance. Courts have discretion to consider equitable principles when deciding whether to issue the writ." *Jalowiec Realty Associates, L.P.* v. *Planning & Zoning Commission*, supra, 278 Conn. 418. Because the commission complied with the appropriate time limitations, we need not consider the equitable principles that may be applicable in denying a writ of mandamus.

for a writ of mandamus. Section 8-8 (c) provides in relevant part that "[i]n those situations where the approval of a planning commission must be inferred because of the failure of the commission to act on an application, any aggrieved person may appeal under this section. . . ." The Koenig neighbors filed their appeal on February 6, 2004, in response to the Cammarotas' February 4, 2004 letter to the commission that claimed they were due automatic approval of their subdivision application. The Cammarotas now claim that Stephanie Fians was the only one of the Koenig neighbors who established that she was statutorily aggrieved. The Koenig neighbors argue, as did the commission in the mandamus action, that the commission complied with the time requirements of § 8-7d, and therefore the Cammarotas are not entitled to an automatic approval. We agree with the court that the outcome in the mandamus action renders this case moot.

"Mootness implicates the court's subject matter jurisdiction and is thus a threshold matter for us to resolve. . . . It is a well-settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . An actual controversy must exist not only at the time the appeal is taken, but also throughout the pendency of the appeal. . . . When . . . events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot." (Internal quotation marks omitted.) *Brown* v. *Brown*, 69 Conn. App. 209, 211–12, 794 A.2d 550 (2002). Because we affirm the judgment of the trial court and conclude that the Cammarotas' application for a writ of mandamus was denied properly, the action by the Koenig neighbors is moot.

The judgment in docket number AC 26597 is affirmed and the appeal in docket number AC 26837 is dismissed.

In this opinion the other judges concurred.