### VANGUARD ENGINEERING, INC. *v.*
### ANNA B. ANDERSON
### (AC 23814)

Dranginis, DiPentima and Dupont, Js.

---

Argued November 20, 2003—officially released May 18, 2004

*William E. McCoy,* for the appellant (defendant).

*Richard D. Dixon,* for the appellee (plaintiff).

*Opinion*

DiPENTIMA, J. The defendant, Anna B. Anderson, appeals from the judgment rendered in favor of the plaintiff, Vanguard Engineering, Inc., after a trial to the court. On appeal, the defendant argues that the trial court improperly (1) found damages in the amount of $114,534.65 on the basis of common-law conversion where there was no showing of benefit or use to the defendant, (2) awarded treble damages and attorney's fees as exemplary damages, (3) found that the defendant's statutory theft was proven by clear and convinc-

ing evidence, (4) found that the defendant was liable for the federal taxes, state withholding and unemployment taxes and the associated penalties and interest, (5) found that the defendant was the chief executive officer and chief financial officer of the plaintiff, and (6) excluded evidence that the defendant had deposited money from her own funds into the plaintiff's account. Because of our resolution of the evidentiary claim, we do not reach the other claims. The judgment is reversed and the case is remanded for a new trial.

The following facts and procedural history are relevant to our disposition of the defendant's appeal. The plaintiff, a single shareholder corporation, commenced this action against the defendant, claiming conversion and breach of fiduciary duty.[1] James Anderson is the president and sole shareholder of the plaintiff. At all times relevant to this action, he was married to the defendant. The defendant, a certified public accountant, was the secretary and treasurer of the plaintiff, and was responsible for its bookkeeping and accounting. Subsequent to the occurrence of the facts alleged in this matter, James Anderson and the defendant were divorced.

After trial, the court found that the defendant had converted $155,427.68 of the plaintiff's funds. On the basis of its findings, the court trebled the $155,427.68, citing General Statutes § 52-564,[2] awarded attorney's fees of $12,177.25, costs and statutory interest. The award totaled $549,973.62. This appeal followed.

In her pro se answer to the plaintiff's complaint, the defendant alleged that any reimbursements from the

[1] In its memorandum of decision, the court appeared to make no findings as to the breach of fiduciary duty count, but did award statutory interest on both counts. That has not been raised on appeal.

[2] General Statutes § 52-564 provides: "Any person who steals property of another, or knowingly receives and conceals stolen property, shall pay the owner treble his damages."

plaintiff to her were deposited in the joint account of James Anderson and the defendant or paid directly for family liabilities such as credit cards. On appeal, she argues that the court improperly precluded her from presenting evidence concerning money that she or her family had contributed to the plaintiff.

As a threshold matter, our resolution of the defendant's appeal requires us to interpret the defendant's pro se answer. As a consequence, the issue before the court invokes our plenary power to review the legal effect of pleadings. See *Baldwin* v. *Jablecki*, 52 Conn. App. 379, 381, 726 A.2d 1164 (1999) ("interpretation of pleadings is always a question of law for the court"). "Whenever [the] language [of the pleadings] fails to define clearly the issues in dispute, the court will put upon it such reasonable construction as will give effect to the pleadings in conformity with the general theory which it was intended to follow, and do substantial justice between the parties. . . . [I]t is the established policy of the Connecticut courts to be solicitous of pro se litigants and when it does not interfere with the rights of other parties to construe the rules of practice liberally in favor of the pro se party. . . . The modern trend, which is followed in Connecticut, is to construe pleadings broadly and realistically, rather than narrowly and technically." (Citations omitted; internal quotation marks omitted.) *Hill* v. *Williams*, 74 Conn. App. 654, 655–56, 813 A.2d 130, cert. denied, 263 Conn. 918, 822 A.2d 242 (2003). Practice Book § 10-50 "requires that payment must be pleaded as a special defense even when nonpayment of the debt is alleged by the plaintiff . . . ." (Citation omitted.) *Thompson & Peck, Inc.* v. *Harbor Marine Contracting Corp.*, 203 Conn. 123, 132, 523 A.2d 1266 (1987).

Here, although the defendant's answer was not artfully pleaded, its general theory was that she had used the corporation's money to reimburse loans made by

family members and to pay outstanding family bills and, therefore, the payments were not unauthorized or, in the alternative, they constituted a payment and should be considered as a setoff. In this case, and in line with the modern trend of interpreting pleadings, we conclude that the language of the defendant's answer adequately sets forth both a general denial and a claim for setoff. As a consequence of that conclusion, we must next analyze whether the court's evidentiary ruling was proper.

We note that we will set aside a court's evidentiary ruling only when there has been a clear abuse of discretion. *Sheiman* v. *Sheiman*, 72 Conn. App. 193, 201, 804 A.2d 983 (2002). "Even when a trial court's evidentiary ruling is deemed to be improper, we must determine whether that ruling was so harmful as to require a new trial. . . . In other words, an evidentiary ruling will result in a new trial only if the ruling was both wrong and harmful. . . . Finally, the standard in a civil case for determining whether an improper ruling was harmful is whether the . . . ruling [likely] would [have] affect[ed] the result." (Internal quotation marks omitted.) *Daley* v. *McClintock*, 267 Conn. 399, 403, 838 A.2d 972 (2004).

During the cross-examination of James Anderson, the defendant's counsel asked whether he had "analyzed whether [the defendant] deposited moneys to offset [missing money]." The court interrupted the exchange and stated that the defendant was asking about something that had not been pleaded. The court excluded the testimony regarding money that the defendant had contributed to the plaintiff specifically because she had not pleaded the special defense of setoff or payment. We conclude that the court improperly disallowed that line of questioning. The evidence concerning the infusion of personal and family funds into the plaintiff was relevant and material to the issue of the defendant's

intent and to whether the payments were in fact improper or authorized.[3] Conversion requires a showing that the defendant's conduct was in fact unauthorized. *Macomber* v. *Travelers Property & Casualty Corp.*, 261 Conn. 620, 649, 804 A.2d 180 (2002) (conversion defined as " '[a]n unauthorized assumption and exercise of the right of ownership over goods belonging to another, to the exclusion of the owner's rights' ").

The court's failure to allow the defendant to present evidence tending to show that her conduct was authorized effectively negated her ability to show which, if any, payments were in fact authorized. If the payments were authorized, the court could not have found that the defendant had converted that portion of the plaintiff's money. We conclude that this evidentiary ruling likely has affected the outcome of the trial, and that the exclusion of the evidence was both improper and harmful. Therefore, a new trial is necessary.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.

---

[3] At trial, the defendant objected to testimony of James Anderson regarding whether the defendant had taken money for herself out of the plaintiff's account. The defendant's counsel objected, stating that the testimony was relevant only if it showed some improper purpose on the defendant's part. The court admitted the evidence and stated, "If you can show it was for some worthwhile purpose or appropriate purpose, that is a different matter, but at this point, it is certainly admissible to show that she did take the money." As previously stated, the court later precluded the defendant's counsel from presenting testimony tending to show that the defendant's use of the funds was authorized.