# TRAVELERS PROPERTY AND CASUALTY COMPANY
## *v.* HEATHER CHRISTIE ET AL.
## (AC 26080)

Bishop, Gruendel and Dupont, Js.

Argued October 18, 2006—officially released March 6, 2007

*Jeremiah Donovan,* for the appellant (named defendant).

*Kevin A. Coles,* with whom was *Catherine L. Creager,* for the appellee (defendant Robert F. D'Amore).

*Jeffrey F. Buebendorf,* for the appellee (substitute defendant Washington Mutual Bank).

*Opinion*

DUPONT, J. The defendant Heather Christie,[1] the sole appellant, who acted pro se during the trial, appeals from the judgment of the trial court and requests a new trial in this interpleader action brought by the plaintiff, Travelers Property and Casualty Company (Travelers), to determine the appropriate distribution of insurance funds held by it.[2] She claims that the court improperly

---

[1] Also named as defendants were Robert F. D'Amore, Theodore Olynciw and Anchor Mortgage Services, Inc. Because only Christie has appealed, we refer to her in this opinion as the defendant. Washington Mutual Bank was subsequently substituted for Anchor Mortgage Services, Inc., and is an appellee in this appeal.

[2] See General Statutes § 52-484, "Action in nature of interpleader," which provides in relevant part: "Whenever any person has, or is alleged to have, any money or other property in his possession which is claimed by two or more persons, either he, or any of the persons claiming the same, may bring a complaint in equity, in the nature of a bill of interpleader, to any court which by law has equitable jurisdiction of the parties and amount in contro-

(1) precluded her from examining documents at trial merely because she had failed to request them through the formal pretrial discovery process, (2) relied on its observation of her conduct when she was acting as her own advocate to support its determination of the reasonableness of the fee of her appraiser, Robert F. D'Amore, (3) abused its discretion in awarding D'Amore prejudgment interest and (4) failed to distribute the remaining insurance award. Christie claims that she is entitled to a new trial. On the basis of our determination of her first three claims, we agree.[3]

Christie had an insurance policy with Travelers when her residence was damaged by a storm. Christie and Travelers could not agree on the amount of loss, and so, pursuant to the insurance policy, each side hired an appraiser to assess the damage. Also pursuant to the policy, the parties requested that the court appoint an impartial umpire to evaluate the amount of the award proposed by the two appraisers. Eventually, the award was set at $106,806,[4] and Travelers filed an application for confirmation of the appraisal award and for a judgment of interpleader regarding the distribution of the award, naming as defendants Christie; her appraiser, D'Amore; the umpire, Theodore Olynciw; and Anchor

---

versy, making all persons parties who claim to be entitled to or interested in such money or other property. . . ."

[3] In view of our conclusion that a new trial is necessary, we need not reach two other issues raised by the defendant. Christie claims that the intent of the parties at the time she contracted with D'Amore to appraise the damages to her home was that she should pay a substantially reduced fee if she should be unhappy with the service D'Amore provided and that $20,000 is the contractually appropriate fee. Because this question involves a factual finding of intent, which will be adduced at trial on remand, we do not address it. Christie also claims that the court abused its discretion in not granting her a continuance to allow a potential witness time to return to the state in order to testify. It is unlikely that this issue will arise again on remand and so it, too, is unaddressed.

[4] The plaintiff's liability of $106,806 is not in dispute in this appeal.

Mortgage Services, Inc.[5] The court ordered $13,812.50 to be paid to Olynciw, that cost to be divided by Travelers and Christie pursuant to their contract. The court also ordered D'Amore to be paid $43,905.60, plus interest at the rate of 10 percent from February 27, 2004, the date he delivered his bill to Christie.[6] In a subsequent order, entitled "corrected judgment," the court ordered that the "remaining balance be paid to [the substitute defendant] Washington Mutual [Bank]," which holds a security interest in the Christie property. See footnote 6. Christie primarily challenges the court's order directing $43,905.60, plus interest, be paid to D'Amore for the appraisal services he provided.

I

The defendant first claims that the court improperly refused to allow her to examine certain documents in D'Amore's possession. As a preliminary matter, the parties disagree as to whether the court did not allow the defendant to examine the documents as a matter of law because she did not formally request to examine them before trial, or whether, on the facts before it, the court exercised discretion in failing to allow the examination.[7] As the resolution of this question deter-

[5] Anchor Mortgage Services, Inc., had a security interest in the Christie property at the time that Christie obtained the policy of insurance. Washington Mutual Bank, the successor in interest to Anchor Mortgage Services, Inc., subsequently was substituted as a defendant in this case.

[6] This sum was equal to the full amount of D'Amore's bill for the appraisal services he provided, less $300 that he conceded at trial was not justified. The interest was awarded pursuant to General Statutes § 37-3a. See part III.

[7] Typically, we review evidentiary determinations under the abuse of discretion standard of review. This is because, in the usual case, the trial court has, at least implicitly, exercised its discretion in determining that the probative value of otherwise relevant evidence either is or is not outweighed by other considerations unduly prejudicial to the defendant or the court system. This power of the court to conduct such a balancing is codified in § 4-3 of the Connecticut Code of Evidence. See also State v. DeMatteo, 186 Conn. 696, 702–703, 443 A.2d 915 (1982).

In other cases, abuse of discretion is appropriate as a standard for review because the trial court ruled pursuant to discretionary power provided by statute or rule. See, e.g., Practice Book § 13-4 (4). In cases, however, in

mines our standard of review, we address it first. The question of what standard of review applies relates solely to whether certain documents in this case were subject to examination during the course of the trial, when neither their production nor examination had been sought pursuant to the rules of practice governing discovery prior to trial. Our question is whether, in light of the transcript of this trial, the failure to allow examination should be reviewed by us as a discretionary ruling of the court or as a question of law. In determining this question, we first consider our Supreme Court's analysis of a similar inquiry conducted in *New England Savings Bank* v. *Bedford Realty Corp.*, 246 Conn. 594, 717 A.2d 713 (1998). In that case, the court was reviewing "whether, pursuant to General Statutes § 52-180, business records are admissible to prove the amount of a debt, if the witness introducing the records lacks personal knowledge of their provenance." *New England Savings Bank* v. *Bedford Realty Corp.*, supra, 595–96. The court conducted a plenary review of the trial court's determination that the records in question were not admissible. Id., 599 n.7. The trial court in that case did not balance the probativeness of the evidence against unfair prejudice or other exclusionary factors subsequently described in § 4-3 of the Connecticut Code of Evidence. Instead, it determined that the statute governing the admissibility of business records required that the witness introducing the business records have firsthand knowledge of how the records had gotten to the courthouse. Id., 598. Plenary review of that determination was appropriate because the trial court did not exercise its discretion in determining whether the documents were admissible but rather relied on its interpretation of the statutory requirements

which the trial court's decision to allow or not allow evidence was based on its interpretation of a law or rule of evidence, and not the result of a balancing analysis, plenary review is appropriate. See *New England Savings Bank* v. *Bedford Realty Corp.*, 246 Conn. 594, 599 n.7, 717 A.2d 713 (1998).

in determining that it lacked the authority to admit the documents into evidence. See id., 599 n.7. Our Supreme Court specifically noted that it was not determining whether, had the court used its discretion to exclude the evidence, that ruling would have constituted an abuse of discretion. Id., 603 n.9.

In this case, the following exchanges, as recorded in the transcript, are relevant to our determination of the basis for the court's ruling. We count at least eight times that the defendant made an unsuccessful request to view documents held by D'Amore.[8]

The first such instance occurred during the direct examination of D'Amore, when D'Amore's counsel offered a "compilation" of records relating to the work D'Amore claimed to have done for the defendant. The defendant asked to see the original documents in D'Amore's file that he claimed supported the compilation document. The court stated to the defendant: "This isn't the time to ask for it. We're at the hearing now." After a brief exchange, the defendant told the court that she had, in fact, requested to see the documents, and several others before the trial but that she had not received them. The court asked D'Amore's counsel whether the defendant had made such a request. D'Amore's counsel answered, "No, Your Honor. There has been no *formal* request made *through the court process*." (Emphasis added.) The court then asked the defendant if she had documentation of her claimed

---

[8] D'Amore argues that several of these claims should not be reviewed because the defendant did not formally object to the court's evidentiary decisions and thus waived her right to appeal the court's rulings. The defendant made clear to the court her reasons for requesting the various documents to review, and the court was aware of her disagreement with its rulings. See *Pestey* v. *Cushman*, 259 Conn. 345, 367, 788 A.2d 496 (2002). In light of the fact that the defendant was a pro se litigant who was clearly unfamiliar with the formal rules of evidence and procedure, we consider each of her denied production requests in reviewing this claim.

pretrial request, to which she replied that she had documentation of all her various requests, in the form of letters to D'Amore. She could produce only one such letter immediately. The court then turned to D'Amore and asked him whether the defendant had previously received the document. D'Amore answered, "Yes. She has that and all enclosures."[9] Without further inquiry or evidence, the court stated, "That's enough. You may proceed with your examination," and implicitly denied the defendant's request to examine the document. The defendant's subsequent requests to examine documents occurred during her cross-examination of D'Amore. The defendant requested to see D'Amore's Connecticut public adjustor license. D'Amore's counsel objected, stating: "[The defendant] would have had an opportunity to ask for that [during] production." The court agreed but did not state its grounds for sustaining the objection. Soon after this exchange, the defendant apparently located at least one of the other letters recording her pretrial requests for production, for which she had been searching during D'Amore's direct examination. She asked the court: "[W]ould you like to see [the letter] at this time?" The court answered: "No. I want you to cross-examine this witness." Later, the defendant questioned D'Amore about the substance of several telephone calls that appeared on his bill. D'Amore alluded to notes he took of the conversations, and the defendant requested to see them. The court stated: "That should have been done before the hearing." The defendant next requested to see D'Amore's notes regarding thirty other telephone calls that appeared on D'Amore's final bill in an attempt to question the reasonableness of including them. The court again responded that "you should have done discovery before this. . . . You don't do it when

---

[9] It is unclear from the transcript whether the document that D'Amore testified that he had given to the defendant was one of the documents she requested at trial or the document she requested prior to trial, as recorded in the letter she produced at the request of the court.

the witness is on the stand." The defendant requested the key for the abbreviations appearing throughout D'Amore's bill in order to discern to what the itemized charges referred. The defendant asked D'Amore: "Can you now give me a code for these abbreviations?" D'Amore answered: "Sure. I'd be happy to." D'Amore's counsel objected, however, as follows: "This is really not the time to conduct discovery. I can understand an examination of what the witness did, but, on the other hand, if she wanted to know all the abbreviations, all the letters and all the e-mails, she should have filed a request for production, and I would have handed her these two cards. The court told the defendant that "this is a little late to be asking this." The defendant attempted to explain to the court why she was requesting to examine the documents during trial. "Your Honor, I am only just finding out that I had to [try this case] in court . . . not through arbitration or mediation. . . . I was not clear on the rules of the discovery process. That's a severe disadvantage to me." When the defendant finished, the court told her: "Well, then, you should have hired a lawyer to help you out. I can't help it if you're not legally trained, Ms. Christie." The defendant later asked D'Amore for notes substantiating his bill, which D'Amore acknowledged having with him in the courtroom. D'Amore's counsel again objected that "this is really not the time to conduct discovery." The court sustained the objection, noting that "[w]e made that ruling several times." The defendant asked D'Amore to produce documents relating to his evaluation of molding on the defendant's house, which evaluation he included in his bill. The court stated: "That should have all been done before we started the questioning. And you didn't do it, so I can't allow you to do it now." Finally, the defendant requested to see documentation justifying various telephone calls. D'Amore's counsel objected, stating that "this is not the time for

the witness to go through chapter and verse of each one of these things. It could have been produced." The court responded: "Yes, I agree. Objection sustained."

Lacking from those exchanges is any indication that the court considered the defendant's various requests and balanced the importance of the evidence against the possibility of undue delay or any other consideration that would support a determination that the documents should not be examined. When the court did provide a reason for denying the defendant's request, it relied on a perceived lack of authority to exercise discretion to allow the defendant to examine the documents. Particularly illustrative is the court's statement that "you didn't do it [i.e., conduct pretrial discovery], so I *can't* allow you to do it now." (Emphasis added.) The court also stated: "You *don't* [conduct discovery] when the witness is on the stand." (Emphasis added.) In addition, the court noted, after denying one of the defendant's several requests to view documents, that "[w]e made *that* ruling *several times already*." (Emphasis added.) Were the court using its discretion to balance the importance of allowing the defendant to view the requested document against undue delay or other factors, each request would require a new determination and would constitute a new "ruling." The statement that "[w]e made *that* ruling *several times already*"; (emphasis added); shows that the basis of the court's various denials was not the outcome of a balancing analysis to determine admissibility, which would have produced several "rulings," but rather its interpretation of the rules of practice that a party's failure to request pretrial discovery prevents the court from permitting the party to seek documents at trial, which would constitute a single "ruling" of law. Further, when the defendant was stating to the court her frustration at being prevented from examining the various documents, the court advised her that she "should have hired a lawyer . . . ."

The presence of a lawyer, however, would not have increased the importance of allowing the examination of the documents or reduced the delay, if any, such an examination would cause. A lawyer would, however, have been familiar with pretrial requests to view documents in accordance with the rules of practice. The court's "advice," then, was most reasonable if the court was basing its denials of the defendant's requests to examine documents on her failure to request pretrial discovery and not on a discretionary balancing to determine admissibility.

We also note the arguments of counsel raised at the time of the court's rulings. D'Amore's counsel argued that "[the defendant] would have had an opportunity to ask for that [during] production," and "this is really not the time to conduct discovery. . . . [S]he *should have filed a request for production . . . .*" (Emphasis added.) Again, he argued, "this is not the time for the witness to go through chapter and verse of each one of these things. *It could have been produced.*" (Emphasis added.) D'Amore's counsel argued that the defendant should not be allowed to examine the documents because she had not requested them before trial; counsel did not put forth arguments that allowing the defendant to view the documents would unduly prolong the trial or unfairly burden his client.

Finally, and most importantly, had the court been conducting the customary balancing analysis to determine admissibility, rather than ruling as a matter of law, we can discern no reason why it did not allow the defendant to examine at least some of the requested documents. The transcript reveals that at least three of the requested documents were present in the courtroom. Counsel's response to the defendant's request to see D'Amore's key code, which was, "I would have handed her *these two cards*"; (emphasis added); indicates that counsel may actually have had some of the

requested documents in his hand. Producing those documents would not have led to undue delay, nor did the court indicate that it was considering any other relevant factor when it denied this or any of the other requests that would support a conclusion that the court was exercising its discretion. We conclude, on the basis of the transcript, that the court made its various rulings as a matter of law. It impliedly based its rulings on an interpretation of the rules of practice governing pretrial production. An interpretation of a rule of practice requires plenary review. See, e.g., *In re Samantha C.*, 268 Conn. 614, 638, 847 A.2d 883 (2004) (conducting plenary review of trial court's interpretation of rule of practice); *New England Savings Bank* v. *Bedford Realty Corp.*, supra, 246 Conn. 599 n.7 (conducting plenary review of trial court's exclusion of evidence pursuant to business records exception to rule against hearsay). We conclude that plenary review is more appropriate in this case than review for abuse of discretion.[10]

---

[10] D'Amore takes the position that the court did not make its ruling as a matter of law, but rather exercised its discretion in rejecting each request, balancing the importance of letting the defendant examine the documents against the prejudice of undue delay. Although we conclude that the court made its ruling as a matter of law, we believe that, had the court used its discretion, its mechanical rejection of each of the defendant's requests would constitute an abuse of discretion on these facts. The court's discretionary rulings will not be reversed unless they are unreasonable, constituting an abuse of discretion.

We accord wide deference to the initial determinations of the trial court, although the appellate courts of this state will reverse the ruling of a trial court when they conclude that the court has abused its discretion. See, e.g., *Burns* v. *Hanson*, 249 Conn. 809, 825–28, 734 A.2d 964 (1999) (reversing evidentiary ruling as abuse of discretion); *Esposito* v. *Presnick*, 15 Conn. App. 654, 661–65, 546 A.2d 899 (holding that court abused discretion in sustaining objection to admission of tape recordings into evidence), cert. denied, 209 Conn. 819, 551 A.2d 755 (1988).

Here, there are several reasons that lead us to conclude that the court would have abused its discretion, were that the appropriate test, when it mechanically denied each of the defendant's requests to examine certain documents in D'Amore's possession. First, the defendant was acting pro se, and although this does not excuse her from learning the relevant rules of

D'Amore has not brought to our attention, and we have not found, any case or statutory law that absolutely prohibits the court from allowing a litigant to examine documents during trial merely because the litigant did not previously request the documents through the pretrial discovery procedures. Reviewing the relevant general rules governing the trial court's discretion over the presentation and use of evidence at trial, and the overall goal to seek truth during the trial,[11] we conclude that the court's discretion is not rigidly bound by the rules of practice relating to pretrial discovery.

To begin, it is often repeated in our case law that a trial court has wide discretion to determine whether to admit evidence. See, e.g., *United Technologies Corp.* v. *East Windsor*, 262 Conn. 11, 28, 807 A.2d 955 (2002) ("trial court is given broad latitude in ruling on the admissibility of evidence" [internal quotation marks

procedure, it is the court's long-standing policy to apply the rules of procedure liberally in favor of the pro se party, untrained in the law, when it does not interfere with the rights of other parties. *Vanguard Engineering, Inc.* v. *Anderson*, 83 Conn. App. 62, 65, 848 A.2d 545 (2004).

Second, it appears that at least some of the requested material was in the courtroom, and perhaps even in the hand of D'Amore or his counsel, at the time of the request. It is difficult to see how allowing the defendant to examine at least some of the documents would lead to undue delay. Nor is it apparent how allowing the defendant to examine at least some of the requested documents would unfairly prejudice D'Amore, particularly when D'Amore stated that he would be "happy" to give her at least one of the requested documents. The information contained in the documents the defendant wanted to examine was not collateral, but rather the documents were directly related to D'Amore's calculation of his bill, the reasonableness of which was the ultimate issue between the defendant and D'Amore.

Finally, and perhaps most importantly, the transcript reveals that the defendant may have, in fact, requested that at least some of the documents in question be disclosed prior to trial, but the court did not allow her to offer evidence of this even when she claimed to have had the evidence in her hand, instead implicitly ruling that she had made no such request.

[11] Connecticut Code of Evidence § 1-2 (a), for example, provides in relevant part that one of the purposes of the code is to pursue the ends that "the truth may be ascertained and proceedings justly determined."

omitted]). The relevant provisions of the rules of practice and the code of evidence support this proposition. Pretrial production procedures are governed generally by Practice Book §§ 13-9 and 13-10. Section 13-9 addresses requests for pretrial production. Section 13-10 describes the process for responding and objecting to requests for pretrial production. Neither section indicates that the pretrial production procedures present the only way in which a litigant may examine documents possessed by the other party at trial. Our Supreme Court has noted: "[The] rules of discovery are designed to make a trial less a game of blindman's buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent . . . ." (Internal quotation marks omitted.) *Wexler* v. *DeMaio*, 280 Conn. 168, 188–89, 905 A.2d 1196 (2006), quoting *United States* v. *Procter & Gamble Co.*, 356 U.S. 677, 682, 78 S. Ct. 983, 2 L. Ed. 2d 1077 (1958). We further consider Connecticut Code of Evidence § 4-2, which provides in relevant part that "all relevant evidence is admissible, except as otherwise provided by the constitution of the United States, the constitution of this state, the Code or the General Statutes. . . ." No section of the code of evidence provides that failure to seek production makes otherwise relevant evidence inadmissible.

It is true that in many, if not most, cases, a court properly could refuse a litigant's request to examine her adversaries' documents midtrial because of undue delay or other reasons. See *State* v. *DeMatteo*, 186 Conn. 696, 702–703, 443 A.2d 915 (1982). This does not, however, mean that the court is powerless, as a matter of law, to grant such a request. Interpreting the discovery rules absolutely to prohibit a request to examine documents during trial merely because they were not formally requested through pretrial discovery would work against the goal of disclosing facts "to the fullest practicable extent . . . ." (Internal quotation marks omitted.) *Wexler* v. *DeMaio*, 280 Conn. 189. Because we find

no law or rule of practice prohibiting the trial court from allowing a party to examine documents in the hands of the other party at trial merely because the requesting party did not conduct pretrial discovery, and because such a blanket prohibition would contravene the general purpose of discovery, we do not recognize any such per se prohibition in Connecticut's procedural law. We conclude that the court should not have sustained the objections to the defendant's requests to review the appraiser's notes that related to his bill on the ground it did. It cannot be known what the effect on the court's conclusion as to the proper amount of the appraiser's fee would have been had the defendant been allowed to pursue these questions relating to his bill. The appraiser's fee was based in large part on the amount of time he spent in performing his services, but the defendant was precluded from reviewing, or having the court review, his notes that reflected this time spent, some of which were with him in the court. The rulings of the court were, therefore, harmful, and a new trial is required. See *In re Samantha C.*, supra, 268 Conn. 674–75.

II

The defendant next claims that it was improper for the court to consider her conduct in the courtroom, when advocating her cause as evidence supporting the reasonableness of D'Amore's award. Specifically, the defendant argues that the court based its finding of the reasonableness of his fee on her general uncooperative character and that this conclusion was improperly based on its observation of her advocacy style.

As an initial matter, D'Amore does not agree with the defendant that the court based its finding that she was uncooperative on its observation of her advocacy style during trial. We have reviewed the transcript of the court's oral decision in order to decide the defendant's

claim. The court stated that D'Amore "worked under very difficult, frustrating circumstances. Apparently, he had a very uncooperative client that frustrated him on many occasions." The court further stated that the defendant had "demonstrated in court during this several day hearing how difficult she can be, and her attitude and lack of cooperation may well have caused his bill to become higher than it would have been in an ordinary situation."

The court specifically alluded to the defendant's conduct during the course of the "several day hearing" when explaining how it came to the conclusion that she was "uncooperative . . . ." Although the defendant did briefly take the witness stand during the course of the trial, her examination was on one day only, taking up only five pages in the entire three volume transcript. We believe that the court did rely on its observations of the manner in which the defendant conducted her self-representation when concluding that she was "uncooperative . . . ."

The question, then, is whether this reliance was proper. Although the question of relevancy, and thus admissibility, of evidence is subject to review for abuse of discretion, the question of whether an observation of the court properly can be subject to the relevancy analysis at all is a question of law, and therefore our review is plenary. See *Martin* v. *Liberty Bank*, 46 Conn. App. 559, 563, 699 A.2d 305 (1997). "Fairly stated, evidence legally is the means by which alleged matters of fact are properly submitted to the trier of fact for the purpose of proving a fact in issue. . . . It is well settled that representations of counsel are not, legally speaking, evidence." (Internal quotation marks omitted.) Id., 562–63.

In *Martin*, the trial court enjoined the plaintiff in a foreclosure action from bringing any further actions

against the defendants and also from representing himself, pro se, in the pending litigation because the plaintiff was disruptive. Id., 561. In determining that the plaintiff was disruptive, the court heard no testimony but listened only to the arguments of counsel and the plaintiff. Id. This court reversed the injunction order and remanded the action because the unsworn statements and actions before the court could not properly be considered as evidence. Id., 561–63.

Here, the court relied on actions of the pro se litigant when acting as counsel to support its determination that she was uncooperative. For the present question, it makes no difference that in this case, "counsel" was the defendant herself. The defendant's actions as an advocate, in contrast to her demeanor when under oath as a witness, should not have been relied on by the court as evidence to support a key issue in this case, namely, the determination of the reasonableness of D'Amore's fee. Were it otherwise, the pro se litigant would face the difficult question of whether to advocate her case zealously and risk the displeasure of the court, which might influence its decision in assessing the merits of the case itself.

In this interpleader action, the only question of the distribution of the funds held by the plaintiff was the amount to be distributed to the defendant's appraiser, D'Amore. The attitude and personality of the defendant as an advocate for herself was not evidence from which the court could infer that the appraiser's bill was necessarily higher than in "an ordinary situation" due to the temperament of the defendant. Her particular abrasiveness in court, as a pro se litigant, should no more be a factor in deciding a substantive issue than if a member of the bar representing her had exhibited the same behavior. The improper consideration of her demeanor as an advocate was harmful and necessitates a new trial.

## III

Next, we address the defendant's argument that, even if the court was correct in finding that D'Amore's fee was reasonable, the court improperly awarded D'Amore prejudgment interest pursuant to § 37-3a.[12]

The traditional rule applicable to this issue is that "[w]here articles are delivered or services performed, and charged on book, and no time of payment agreed on . . . interest would be chargeable on such accounts if unreasonably delayed . . . ." *Selleck* v. *French*, 1 Conn. 32, 34, (1814); see *Paulus* v. *LaSala*, 56 Conn. App. 139, 147–48, 742 A.2d 379 (1999) (tracing development of Connecticut prejudgment interest law), cert. denied, 252 Conn. 928, 746 A.2d 789 (2000). The modern rule has been codified as § 37-3a.

This court has recently stated that "General Statutes § 37-3a provides in relevant part that interest at the rate of ten per cent a year, and no more, may be recovered and allowed in civil actions . . . as damages for the detention of money after it becomes payable. . . . [P]rejudgment interest is awarded in the discretion of the trial court to compensate the prevailing party for a delay in obtaining money that rightfully belongs to him. . . . The detention of the money must be determined to have been wrongful." (Internal quotation marks omitted.) *Tang* v. *Bou-Fakhreddine*, 75 Conn. App. 334, 347, 815 A.2d 1276 (2003). The party seeking prejudgment interest has the burden of demonstrating that the retention of money is wrongful, and this "requires more than demonstrating that the opposing party detained money when it should not have done so." (Internal quotation marks omitted.) *Smithfield Associates, LLC* v. *Tolland Bank*, 86 Conn. App. 14, 26,

---

[12] We reach this issue because it is likely to arise again after remand, and the issue was briefed and argued before us. See *Falby* v. *Zarembski*, 221 Conn. 14, 26, 602 A.2d 1 (1992).

860 A.2d 738 (2004), cert. denied, 273 Conn. App. 901, 867 A.2d 839 (2005).

Although whether to award prejudgment interest is, in the first instance, a decision within the discretion of the trial court, the discretion is not unbounded. As early as 1814, our Supreme Court stated that "interest ought to be allowed only, where there is a written contract for the payment of money on a day certain, as on bills of exchange, and promissory notes; or where there has been an express contract; or where a contract can be presumed from the usage of trade, or course of dealings between the parties; or where it can be proved that the money has been used, and interest actually made." *Selleck* v. *French*, supra, 1 Conn. 34.

In *Foley* v. *Huntington Co.*, 42 Conn. App. 712, 739, 682 A.2d 1026, cert. denied, 239 Conn. 931, 683 A.2d 297 (1996), we noted that "section 37-3a provides a substantive right that applies only to certain claims." The *Foley* court then extensively reviewed the cases in which § 37-3a interest was properly awarded and those in which it was not. On the one hand, the court noted: "Prejudgment interest pursuant to § 37-3a has been applied to breach of contract claims for liquidated damages, namely, where a party claims that a specified sum under the terms of a contract, or a sum to be determined by the terms of the contract, owed to that party has been detained by another party." Id., 740. On the other hand, it noted that "our Supreme Court [has] concluded that requests for prejudgment interest in personal injury claims do not typically constitute a claim for the wrongful detention of money before the rendering of judgment . . . ." Id., 741. The reasons for this limitation were that in personal injury claims, damages are typically uncertain, the purpose of the damages is to restore the injured to the status they had prior to the negligent act, and such claims do not seek to regain money detained by another. Id., 741–42.

Subsequent to *Foley*, this court noted that "[p]rejudgment interest pursuant to § 37-3a . . . ordinarily does not apply to contract actions in which the plaintiff is not seeking the recovery of liquidated damages or the recovery of money advanced under a contract and wrongfully withheld after a breach of that contract. The prejudgment interest statute does not apply to such actions because they do not advance claims based on the wrongful withholding of money, but rather seek damages to compensate for losses incurred as a result of a defendant's negligence. Moreover, such damages are not considered due and payable until after a judgment in favor of the plaintiff has been rendered." *Tang* v. *Bou-Fakhreddine*, supra, 75 Conn. App. 349.

The cases we have cited illustrate that the focus of the prejudgment interest award allowed by § 37-3a has been to provide interest, at the discretion of the court, when there is no dispute over the sum due and the liable party has, without justification, refused to pay.[13]

D'Amore provided a service to the defendant, primarily an appraisal of the damage to her house. The contract between the parties did not specify a sum certain to be paid at completion, but rather the fee was to be reasonably based on the work that the appraiser actually completed. After D'Amore sent his bill to the defendant, there arose a disagreement between the parties as to the fee amount. There was no evidence, and the court did not find, that this disagreement was in bad faith on the part of either party. At no time prior to judgment did the defendant have actual control of the

---

[13] We have found one contrary case as to the lack of a need for a liquidated sum in order to obtain General Statutes § 37-3a interest, penned in the early years of the twentieth century. *Loomis* v. *Gillett*, 75 Conn. 298, 53 A. 581 (1902). Although the case has never been overruled, it has never been cited for the proposition that prejudgment interest is appropriate when damages are unliquidated. We conclude that the reasoning of that case has not been adopted in cases decided after 1902.

money, nor did she benefit by its use or any accrued interest. The court made no finding of other equitable considerations supporting its interest award, and D'Amore offered none save the fact that he provided his services.

D'Amore argues that the equities favor upholding the award of prejudgment interest against the defendant because the Travelers award would have been distributed, and thus his fee would have been paid had the defendant simply accepted his proposed fee. Were D'Amore's argument correct, the defendant would have an equally valid claim for prejudgment interest against D'Amore as she, too, could not secure her portion of the Travelers award because D'Amore disputed her assessment of his fee.

The defendant did not agree contractually to pay a sum certain before D'Amore began his work, she had a good faith disagreement with D'Amore over the amount of his fee, and she did not actually control or benefit from the detention of the money. Thus, on the basis of these facts, no interest as provided in § 37-3a should have been awarded to the appraiser.

## IV

Finally, the defendant also asks us to remand the case with instruction to the trial court to order that the remaining balance of the funds, after payment of umpire and appraisal fees, be paid to her. She notes that the court's order of November 18, 2004, did not specify how the remaining funds should be distributed. Washington Mutual Bank, however, argues that the "corrected judgment" later issued by the court and filed on May 16, 2006, adequately addressed the omission by distributing the remaining funds to it. We agree with Washington Mutual Bank. At oral argument before this court, the defendant's counsel stated that the defendant does not dispute the contract she had with Washington Mutual

Bank under which Washington Mutual Bank would have actual possession and control of any proceeds until such time as the necessary repairs are made. Neither the defendant nor Washington Mutual Bank took exception to the "corrected judgment."

"It is a well-settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction . . . ." (Internal quotation marks omitted.) *Cammarota* v. *Planning & Zoning Commission*, 97 Conn. App. 783, 796, 906 A.2d 741, cert. denied, 280 Conn. 941, 912 A.2d 475 (2006). As there is no actual controversy, at least at this time, between the defendant and Washington Mutual Bank as to the distribution of the proceeds between them, and there is no argument that the corrected judgment order is incorrect, we reject the defendant's claim.

The judgment is reversed only as to the determination of the amount due to the appraiser, Robert D'Amore, and as to the award of interest thereon, and the case is remanded for a new trial on the appraisal fee. The judgment is affirmed in all other respects.

In this opinion GRUENDEL, J., concurred.

BISHOP, J., concurring. I agree with the result reached by my colleagues and with the opinion's well reasoned analyses of the claims regarding prejudgment interest and the distribution of excess funds. I write separately, however, because I do not believe the record supports a finding that the trial court based its evidentiary rulings on a misinterpretation of the law, thereby entitling us to exercise plenary review. I believe that repeated statements by the trial court that "I can't allow you to do it now" or language in a similar vein reflect no more than colloquial speech and that these statements do not suggest that the court believed itself

legally impotent to accede to the requests of the defendant Heather Christie. Having determined that the court did not rule as a matter of law, I would not accord plenary review to the defendant's evidentiary claims. Because I believe that the record fairly supports the conclusion that in refusing to balance the defendant's requests for the production of documents with the orderly conduct of the trial, the court failed to exercise its discretion properly, I concur with the result reached by my colleagues, although I take a different path.