LAW OFFICES OF NEIL JOHNSON *v.*
ADMINISTRATOR, UNEMPLOYMENT
COMPENSATION ACT, ET AL.
(AC 27506)

Bishop, Gruendel and Lavine, Js.

Argued March 23—officially released June 19, 2007

*Neil Johnson*, for the appellant (plaintiff).

*Richard T. Sponzo*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *William J. McCullough*, assistant attorney general, for the appellee (named defendant).

*Opinion*

GRUENDEL, J. The plaintiff, the Law Offices of Neil Johnson, appeals from the judgment of the trial court dismissing its appeal from the decision of the employment security board of review (board). The board affirmed the decision of the defendant administrator of the Unemployment Compensation Act, General Statutes § 31-222 et seq., finding the plaintiff liable for unemployment contributions regarding Dorothy V. Parsons,

its former employee.[1] On appeal, the plaintiff contends that (1) our rules of practice required the board to provide the plaintiff a certified copy of the administrative record, (2) the court improperly acted on the defendant's motion for judgment and (3) the court improperly concluded that Parsons was eligible for unemployment benefits. He also alleges a due process violation. We affirm the judgment of the trial court.

The relevant facts are as follows. The plaintiff hired Parsons as a paralegal in November, 1999. At that time, Parsons asked to be paid each Friday for that week's work. Although the plaintiff paid its other employees for work performed in the preceding week, it agreed to Parson's request. That compensation arrangement continued over the next four years. It ended in the summer of 2004.

The employment security appeals referee (referee) made the following findings of fact in its written decision: "In late June or early July, 2004, the [plaintiff's] bookkeeper advised [the plaintiff] to put [Parsons] on the same pay schedule as the other employees. . . . On July 6, 2004, the [plaintiff] asked [Parsons] to sign a document acknowledging the [plaintiff's] right to change her paycheck schedule to coincide with that of the other employees and to authorize the [plaintiff] to begin paying her one week behind, effective August 2, 2004. The document specified that [Parsons] would therefore not receive a paycheck on August 2, 2004. [Parsons] did not sign the authorization and indicated to the [plaintiff] that it would cause a problem with her finances. [Parsons] advised the [plaintiff] that she would think about it. . . . As of Friday, July 15, 2004, [Parsons] had not signed the authorization form

---

[1] Parsons was named as a defendant but is not a party to this appeal. We therefore refer to the administrator of the Unemployment Compensation Act as the defendant.

because her condominium fees were coming due and it would have caused her financial hardship to have a week with no income. . . . On Friday, July 15, 2004, the [plaintiff] did not pay [Parsons] her weekly wages. . . . On July 19, 2004, [Parsons] resigned. After resigning, [she] received the check for the week of July 15, 2004, in the mail."

Parsons subsequently filed a claim for unemployment benefits, which the defendant granted. The plaintiff appealed the matter to the referee, who heard Parsons' claim de novo and affirmed the defendant's determination. The plaintiff then appealed that determination to the board. In its October 26, 2005 memorandum of decision, the board stated: "The record discloses that, at the time of hire, [Parsons] specifically negotiated for the [plaintiff] to pay her at the end of a work week, rather than the following week, which was the [plaintiff's] usual practice. Thus . . . the [plaintiff] substantially changed the working conditions when it announced that [Parsons] would now have to wait until the week following a week of work to get paid for that week. Thus, we concur in the referee's conclusion that [Parsons] had good cause attributable to the [plaintiff] to leave the job. We find that the parties have not offered any argument in support or in opposition to the appeal which would disturb the referee's findings of fact. We further find that the findings are supported by the record and that the conclusion reached by the referee is consistent with those findings and the provisions of the Connecticut Unemployment Compensation Act. Accordingly, we adopt the referee's findings of fact and decision."

From that judgment, the plaintiff appealed to the Superior Court on December 2, 2005. On February 3, 2006, the defendant filed a motion for judgment that sought the dismissal of the plaintiff's appeal. In response, the plaintiff filed an objection, which the

court expressly considered and overruled. On February 16, 2006, the plaintiff filed a "motion for default and/or order," complaining that the defendant failed to comply with Practice Book § 10-12 by not providing it a certified copy of the record.[2] On February 22, 2006, the court granted the defendant's motion for judgment, dismissing the plaintiff's appeal. The plaintiff filed a motion to reargue on March 3, 2006. In denying reargument, the court stated that it "fully considered the [plaintiff's] arguments as stated in its objection before ruling on the [defendant's] motion for judgment."

The plaintiff thereafter requested an articulation of the court's judgment, which the court granted. In its articulation, the court stated: "The court considered all of the [plaintiff's] arguments, as stated in its objection to the [defendant's] motion for judgment, and resolved them as follows: (1) The [defendant's] motion for judgment and its supporting memorandum of law were filed two months after a certified copy of the record had been filed with the court. In that time period, the [plaintiff] had not claimed the case for the short calendar or taken any other action regarding the appeal such as moving to correct a finding of the board within two

[2] Practice Book § 10-12 provides: "(a) It is the responsibility of counsel or a pro se party filing the same to serve on each other party who has appeared one copy of every pleading subsequent to the original complaint, every written motion other than one in which an order is sought ex parte and every paper relating to discovery, request, demand, claim, notice or similar paper. When a party is represented by an attorney, the service shall be made upon the attorney unless service upon the party is ordered by the judicial authority.

"(b) It shall be the responsibility of counsel or a pro se party at the time of filing a motion for default for failure to appear to serve the party sought to be defaulted with a copy of the motion. Upon good cause shown, the judicial authority may dispense with this requirement when judgment is rendered.

"(c) Any pleading asserting new or additional claims for relief against parties who have not appeared or who have been defaulted shall be served on such parties."

weeks of the filing of the record, as required by Practice Book § 22-4. The motion for judgment substantially complied with Practice Book § 22-2 (b) and, along with its supporting memorandum of law, provided the [plaintiff] with adequate notice of the grounds of the motion so that the [plaintiff] could respond in a meaningful way . . . and the court could address the issues raised on this limited statutory appeal from the decision of the board . . . . No rights of the [plaintiff] were violated by the [defendant's] motion for judgment. (2) The [plaintiff] received adequate notice of the issues to be heard and decided by the referee and the board . . . and none of the procedures employed by the referee or the board in hearing and deciding the claim made by [Parsons] violated any of the [plaintiff's] constitutional rights. (3) The board's findings of fact were supported by evidence in the record, and its conclusions were not arbitrary, unreasonable or illegal, nor did they result from a misapplication of the applicable law to the facts found. (4) No provision of the General Statutes or the Practice Book requires that a copy of the record be provided to the [plaintiff]. The only requirement is that the board, not the [defendant], certify a copy of the record of proceedings before it to the court; General Statutes § 31-249b; Practice Book § 22-1 (b); and the board complied with that requirement on December 2, 2005. After that date the record was available to the [plaintiff] for all purposes, including the filing of a motion to correct the record, if necessary, within two weeks of the filing of the record with the court." This appeal followed.

I

We address first the plaintiff's claim that our rules of practice required the board to provide the plaintiff a certified copy of the administrative record. Our review

of that claim is plenary. See *Travelers Property & Casualty Co.* v. *Christie*, 99 Conn. App. 747, 757, 916 A.2d 114 (2007).

Practice Book § 10-12 requires counsel in civil actions to serve on each other party who has appeared copies of pleadings, written motions and papers relating to discovery, request, demand, claim, notice or similar paper. See footnote 2. Reasoning that the present appeal is a civil action, the plaintiff insists that Practice Book § 10-12 required the board to provide it a copy of the administrative record. We do not agree. Significantly, the board is not a party to this appeal. Although the board may intervene in such proceedings pursuant to General Statutes § 31-249c, it did not do so in this case. As such, Practice Book § 10-12 is inapplicable.

Chapter 22 of our rules of practice governs unemployment compensation proceedings in the Superior Court. Upon the commencement of an appeal therein, Practice Book § 22-1 (b), which mirrors General Statutes § 31-249b, requires that "the chair of the board shall cause to be mailed to the clerk a certified copy of the record, which shall consist of the notice of appeal to the referee and the board, the notices of hearing before them, the referee's findings of fact and decision, the findings and decision of the board, all documents admitted into evidence before the referee and the board or both, and all other evidentiary material accepted by them."[3] Nothing in the General Statutes or our rules of practice requires the board to furnish a copy of that record to the plaintiff.[4]

General Statutes § 31-237g provides in relevant part that "[t]he board shall adopt regulations . . . concerning the rules of procedure for the hearing and disposition of appeals under the provisions of this chapter.

---

[3] It is undisputed that the board did so on December 2, 2005.

[4] By contrast, Practice Book § 22-1 (a) specifically requires the board to provide copies of an appeal petition to the court and all parties.

. . ." Section 31-237g-51 of the Regulations of Connecticut State Agencies requires the board to certify the administrative record in a given matter to the Superior Court. It further requires the board to deliver a written notice of certification to the parties, attorneys and authorized agents of record. The plaintiff received such notice in the present case. It was free, therefore, either to review the certified administrative record or to obtain a copy thereof. It opted not to do so.

In essence, the plaintiff asks us to rewrite the aforementioned regulation and Practice Book § 22-1. We decline that invitation. To the contrary, we conclude that the board was not required to provide the plaintiff with a copy of the certified administrative record.

## II

We next consider the procedural vehicle employed by the defendant in the present case. Two months after the administrative record was certified, the defendant filed a motion for judgment that sought the dismissal of the plaintiff's appeal. The plaintiff contends that that motion is improper in the context of unemployment compensation appeals. Our review of that question of law is plenary. See *Dept. of Social Services* v. *Saunders*, 247 Conn. 686, 696, 724 A.2d 1093 (1999).

The administrative record was certified to the Superior Court on December 2, 2005. Practice Book § 22-2 provides: "(a) Appeals from decisions of the employment security board of review are privileged with respect to their assignment for trial, but they shall be claimed for the short calendar. The judicial authority, however, may order the appeal placed on the administrative appeal trial list. (b) In any appeal in which one of the parties is not represented by counsel and in which the party taking the appeal does not claim the case for the short calendar or trial within a reasonable time after the return day, the judicial authority may of its own

motion dismiss the appeal, or the party ready to proceed may move for nonsuit or default as appropriate." Thus, the plaintiff was required to claim its appeal for the short calendar within a reasonable time.

Likewise, Practice Book § 22-4 specifies that a motion to correct a finding of the board must be filed within two weeks of the certification of the record. In the two weeks following certification, the plaintiff neither claimed the appeal for the short calendar nor moved to correct any of the board's findings. In fact, more than two months passed without any action whatsoever by the plaintiff. On February 3, 2006, the defendant filed the motion for judgment. The motion maintained that because the board correctly determined that Parsons was eligible for unemployment benefits, the appeal should be dismissed. The issue before us is whether such a motion is permitted. We answer that question affirmatively.

Ordinarily, administrative appeals are subject to the pleading and filing requirements specified in Practice Book § 14-7 (a). Notably, Practice Book § 14-7 (b) excepts unemployment compensation appeals from those requirements, providing that "[a]ppeals from the employment security board of review shall follow the procedure set forth in chapter 22 of these rules." Practice Book § 22-9, entitled "Function of the Court," provides in relevant part that unemployment compensation appeals "are heard by the court upon the certified copy of the record filed by the board. The court does not retry the facts or hear evidence. It considers no evidence other than that certified to it by the board, and then for the limited purpose of determining whether the finding should be corrected, or whether there was any evidence to support in law the conclusions reached. It cannot review the conclusions of the board when these depend upon the weight of the evidence and the

credibility of witnesses. *In addition to rendering judgment on the appeal,* the court may order the board to remand the case to a referee for any further proceedings deemed necessary by the court. . . ." (Emphasis added.) Practice Book § 22-9 (a). Plainly, then, the court's primary function is rendering judgment on the appeal.

The plaintiff confuses the defendant's motion for judgment with one for nonsuit or default due to the plaintiff's failure to claim the appeal for the short calendar. The defendant's motion was neither. Rather, it was a motion for judgment on the merits, requesting the court to exercise its core function in unemployment compensation appeals. We see no good reason, nor has the plaintiff demonstrated any, why a party should not be permitted to claim an unemployment compensation appeal to the short calendar on the merits, when such adjudication is the ultimate task of the court. Indeed, this procedure is commonplace in Connecticut courts.[5] Moreover, the court could not in the present case consider any evidence other than that certified to it by the board, as the two week period for filing a motion to

---

[5] See, e.g., *Dubois* v. *Administrator, Unemployment Compensation Act,* Superior Court, judicial district of Waterbury, Docket No. CV-05-4008859-S (July 3, 2006); *New Britain* v. *Administrator, Unemployment Compensation Act,* Superior Court, judicial district of New Britain, Docket No. HHB-CV-05-4008872-S (June 20, 2006); *Millard* v. *Administrator, Unemployment Compensation Act,* Superior Court, judicial district of Fairfield, Docket No. CV-05-4007929-S (March 23, 2006); *Bellocchio* v. *Administrator, Unemployment Compensation Act,* Superior Court, judicial district of Fairfield, Docket No. CV-04-4003167-S (January 26, 2006); *Figueroa* v. *Administrator, Unemployment Compensation Act,* Superior Court, judicial district of Fairfield, Docket No. CV-05-4007979-S (January 19, 2006); *Dagostino* v. *Administrator, Unemployment Compensation Act,* Superior Court, judicial district of New Britain, Docket No. HHB-CV-05-4006352-S (September 26, 2005); *Colonial BT, LLC* v. *Administrator, Unemployment Compensation Act,* Superior Court, judicial district of Windham at Putnam, Docket No. CV-04-4000194-S (July 27, 2005); *Cramer* v. *Administrator, Unemployment Compensation Act,* Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-04-0199684-S (January 7, 2005).

correct contained in Practice Book § 22-4 had passed. We concur with the court's observation that the defendant's motion for judgment, along with its supporting memorandum of law, provided the plaintiff with adequate notice of the grounds of the motion so that the plaintiff could respond in a meaningful way. The court's consideration of the defendant's motion for judgment, therefore, was not improper.

### III

The plaintiff also assails the court's determination on the merits. He claims that the court improperly concluded that Parsons was eligible for unemployment benefits. "[R]eview of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . Neither this court nor the trial court may retry the case or substitute its own judgment for that of the administrative agency on the weight of the evidence or questions of fact. . . . Our ultimate duty is to determine, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily, illegally or in abuse of its discretion." (Internal quotation marks omitted.) *Reeder* v. *Administrator, Unemployment Compensation Act*, 88 Conn. App. 556, 557–58, 869 A.2d 1288, cert. denied, 275 Conn. 918, 883 A.2d 1245 (2005).

The plaintiff does not quarrel with any of the factual findings made by the referee and adopted by the board.[6] Rather, he claims that those facts do not support the conclusion that Parsons was eligible for unemployment

---

[6] As noted in part II, the plaintiff did not file a motion to correct any finding of the board within two weeks of the certification of the record as required by Practice Book § 22-4. As a result, we cannot consider any evidence other than that certified by the board.

benefits due to good cause attributable to the plaintiff. We disagree.

General Statutes § 31-236 (a) (2) (A) provides in relevant part that "no individual shall be ineligible for benefits if the individual leaves suitable work (i) for good cause attributable to the employer, including leaving as a result of changes in conditions created by the individual's employer . . . ." Section 31-236-19 of the Regulations of Connecticut State Agencies, entitled "Good cause attributable to the employer," states that "[i]n determining whether an individual's reason for leaving suitable work is for good cause attributable to the employer, the [defendant] must find that the reason relates to wages, hours or working conditions which comprise the employment that the individual voluntarily left." Section 31-236-20 of the Regulations of Connecticut State Agencies further requires, in determining that an individual voluntarily left suitable work for good cause attributable to the employer, that the defendant must find that the employer "breached the original employment agreement" and that the individual "expressed his dissatisfaction regarding wages to his employer and unsuccessfully sought a remedy through those means reasonably available to him before leaving his employment."

In its October 26, 2005 memorandum of decision, the board stated: "The record discloses that, at the time of hire, [Parsons] specifically negotiated for the [plaintiff] to pay her at the end of a work week, rather than the following week, which was the [plaintiff's] usual practice. Thus . . . the [plaintiff] substantially changed the working conditions when it announced that [Parsons] would now have to wait until the week following a week of work to get paid for that week. Thus, we concur in the referee's conclusion that [Parsons] had good cause attributable to the [plaintiff] to leave the job."

The decision of the board, like that of the referee, was predicated on the plaintiff's breach of the employment agreement it negotiated with Parsons. Further, the board's findings include the fact that Parsons declined to sign the authorization form prepared by the plaintiff. Parsons informed the plaintiff that the proposed change to the employment agreement "would cause a problem with her finances" on July 6, 2004. The board also found that, "[a]s of Friday, July 15, 2004, [Parsons] had not signed the authorization form because her condominium fees were coming due, and it would have caused her financial hardship to have a week with no income." Parsons ultimately decided not to sign the authorization form; she resigned on July 19, 2004.

In light of the evidence contained in the certified administrative record, we conclude that the board did not act unreasonably, arbitrarily, illegally or in abuse of its discretion in concluding that Parsons was eligible for unemployment benefits. As such, the plaintiff's claim fails.

IV

The plaintiff's final claim is that the notice of the hearing before the referee violated its right to due process. That claim merits little discussion. The notice provided to the plaintiff stated in relevant part: "An appeal has been filed from a determination by the [defendant] on a claim for unemployment benefits. The appeal will be heard by the undersigned referee. . . . The hearing will cover the issue(s) and provisions of the law which appear on page two of this notice. . . ." The second page of the notice stated: "[Section] 31-236 (a) (2) (A) of the General Statutes and §§ 31-236-17 through 31-236-23 of the Regulations of Connecticut State Agencies. Issue: Whether [Parsons] voluntarily left suitable work without good cause attributable to

the [plaintiff], including leaving due to a change in the conditions of employment created by the [plaintiff]."

On appeal, the plaintiff alleges that it had no notice that whether Parsons voluntarily left work with good cause attributable to the plaintiff was an issue before the referee.[7] The plaintiff states in its appellate brief that it "should not be held in a position to blindly enter a proceeding" unaware of the allegations asserted against it. We are mystified by that assertion. The notice that it challenges on appeal explicitly indicated that whether Parsons voluntarily left work with good cause attributable to the plaintiff was an issue to be decided by the referee. Accordingly, the plaintiff cannot, by any stretch of the imagination, maintain that the notice violated its right to due process.

Finally, we note that the plaintiff, in its reply brief, claims for the first time that "the Superior Court in this appeal further denied the plaintiff its due process rights by not even letting the plaintiff be heard on the merits of the appeal. It subjected the plaintiff to arbitrary rules and standards which not only do not exist as a matter of law, but were apparently created out of thin air so that only the [defendant] knows [what] the rules are, rather than the rules outlined by statute and Practice Book." That two sentence paragraph is devoid of any analysis or citation to legal authority. Moreover, it is "a well established principle that arguments cannot be raised for the first time in a reply brief." (Internal quotation marks omitted.) *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, 245 Conn. 1, 48 n.42, 717 A.2d 77 (1998). We therefore decline to review that claim.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[7] The plaintiff claims that it thought the issue before the referee was whether a hostile work environment existed. The notice of the hearing before the referee contains no reference to a hostile work environment.